UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

HEDWIG LISMONT,

     Plaintiff,

v

ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK
GMBH & CO. KG, ABICOR
UNTERNEHMENSVERWALTUNGS GMBH,
IBG INDUSTRIE-BETEILIGUNGS-GMBH &
CO. KG and RICHARD SATTLER,

     Defendants.

Case No. 2:12-cv-592

Hon. Mark S. Davis

---

**DEFENDANT ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK GMBH & CO, KG,
ABICOR UNTERNEHMENSVERWALTUNGS GMBH,
IBG INDUSTRIE-BETEILIGUNGS-GMBH & CO. KG and RICHARD SATTLER'S
BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) AND (6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    The '406 Patent ........................................................................................................ 2

    German Litigation on the Issue of Inventorship .................................................... 4

ARGUMENT ................................................................................................................... 8

    I.      Standard of Review Under Federal Rule of Civil Procedure 12(b)(2) and (6) .................................................................................................................. 8

    II.    This Court lacks personal jurisdiction over Defendants Abicor, IBG, and Sattler. ................................................................................................................. 9

          A.     Section 293 does not provide this Court with personal jurisdiction over Defendants IBG, Abicor and Sattler because they are not "patentees" under the statute. ................................................................. 9

          B.     This Court lacks personal jurisdiction, either general or specific, over the non-resident German Defendants IBG, Abicor, and Sattler. ....................................................................................................... 11

    III.   Counts I and III of Lismont's Complaint are barred by the doctrine of collateral estoppel because Lismont previously litigated the issue of inventorship for nine years in Germany. .............................................................. 15

    IV.   Lismont's correction of inventorship and patent infringement claims are barred by the doctrine of laches .......................................................................... 18

          A.     Lismont's correction of inventorship claim is barred by laches. ............... 19

          B.     Lismont's patent infringement claim is likewise barred by laches because of Lismont's unreasonable delay. .................................................. 21

    V.    Lismont's unjust enrichment claim is barred by the applicable statute of limitations or, in the alternative, preempted by federal patent law. ...................... 22

          A.     Lismont's unjust enrichment claim is barred by the three-year statute of limitations. ...................................................................................... 22

          B.     Federal patent law controls the question of inventorship, and thus preempts Plaintiff's unjust enrichment claim. ........................................... 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**

*3D Sys., Inc. v. Aarotech Labs, Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998) .................................................................. 14

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ........................................................ 19, 20, 21

*Am. Home Prods. Corp. v. Lockwood Mfg. Co.*,
  483 F.2d 1120 (6th Cir. 1973) .................................................................. 20

*Arachnid, Inc. v. Merit Indus., Inc.*,
  939 F.2d 1574 (Fed. Cir. 1991) ................................................................ 10

*Arcomed Corp. v. Sofamor Danek Group*,
  253 F.3d 1371 (Fed. Cir. 2001) ................................................................ 18

*Arko Corp. v. Luker*,
  45 F.3d 1541 (Fed. Cir. 1995) .................................................................. 14

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ................................................................ 11

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
  402 U.S. 313 (1971) .......................................................................... 15, 16

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................ 14

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................. 9

*Caterpillar, Inc. v. Sturman Industries, Inc.*,
  387 F.3d 1358 (Fed. Cir. 2005) ................................................................ 18

*Convergence Technologies (USA), LLC v. Microloops Corp.*,
  711 F. Supp. 2d 626 (E.D. Va. 2010) ........................................................... 12

*East West LLC v. Rahman*,
  873 F. Supp. 2d 721 (E.D. Va. 2012) ........................................................... 22

*ESAB Group, Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) .................................................................. 14

*Ethicon, Inc. v. United States Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998) ................................................................ 18

*Field Auto City, Inc. v. General Motors Corp.*,
  476 F. Supp. 2d 545 (2007) ..................................................................... 3

*Fitroil, N.A., Inc. v. Maupin*,
  178 F.3d 1310 (Table), 1998 WL 851131 (Fed. Cir. Dec. 3, 1998) ....................... 10

*FMC Corp. v. Guthery*,
  2009 WL 1033663 (D. N.J. Apr. 17, 2009) ............................................... 19, 20

*Giarratano v. Johnson*,
  521 F.3d 298 (4th Cir. 2008) .................................................................... 9

*GIV, LLC v. International Business Machines Corp.*,
  2007 WL 1231443 (E.D. Va. April 24, 2007) ........................................... 22, 24

Page

*Hall v. Aqua Queen Mfg., Inc.*,
   93 F.3d 1548 (Fed. Cir. 1996) ................................................................................. 20

*Humanscale Corp. v. CompX Int'l Inc.*,
   2010 WL 3222411 (E.D. Va. Aug. 16, 2010) ......................................................... 19

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994) ................................................................................. 16

*In re Pabst Licensing GMBH & Co. Litigation*,
   590 F. Supp. 2d 94 (D. D.C. 2008) ......................................................................... 11

*International Courier, Inc. v. Smoak*,
   441 F.3d 214 (4th Cir. 2006) ..................................................................................... 3

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ................................................................................................ 12

*Lane & Bodley Co. v. Locke*,
   150 U.S. 193 (1893) .......................................................................................... 19, 21

*Med. Solutions, Inc. v. C Change Surgical, LLC*,
   541 F.3d 1136 (Fed. Cir. 2008) ................................................................................. 9

*Nichols v. G.D. Searle & Co.*,
   991 F.2d 1195 (4th Cir. 1993) ................................................................................ 12

*Nielsen Co. (US), LLC v. comScore, Inc.*,
   819 F. Supp. 2d 589 (E.D. Va. 2011) ....................................................................... 9

*Olympia Werke Aktiengesellschaft v. General Elec. Co.*,
   712 F.2d 74 (4th Cir. 1983) .................................................................................... 21

*Powell v. The Home Depot U.S.A., Inc.*,
   2010 WL 375796 (S.D. Fla., Jan. 26, 2010) ..................................................... 23, 24

*Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*,
   301 F. Supp. 2d 545, 549 (E.D. Va. 2004) ................................................. 10, 13, 14

*Richardson v. William Sneider and Associates, LLC*,
   2012 WL 3525625 (E.D. Va. July 24, 2012) ......................................................... 14

*Serdarevic v. Advanced Med. Optics, Inc.*,
   532 F.3d 1352 (Fed. Cir. 2008) ........................................................................ 19, 20

*Shell Petroleum, Inc. v. U.S.*,
   319 F.3d 1334 (Fed. Cir. 2003) .............................................................................. 16

*Silent Drive, Inc. v. Strong Indus., Inc.*,
   326 F.3d 1194 (Fed. Cir. 2003) .............................................................................. 12

*Sportrust Assocs. Int'l, Inc. v. Sports Corp.*,
   304 F. Supp. 2d 789 (E.D. Va. 2004) ..................................................................... 12

*Stark v. Advanced Magnetics, Inc.*,
   29 F.3d 1570 (Fed. Cir. 1994) .......................................................................... 19, 21

*Stephen Slesinger, Inc. v. Disney Enters., Inc.*,
   -- F.3d --, 2012 WL 6634221 (Fed. Cir. Dec. 21, 2012) ....................................... 16

*Stern v. The Trustees of Columbia Univ.*,
   434 F.3d 1375 (Fed. Cir. 2006) .............................................................................. 18

*Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*,
   299 F. Supp. 2d 565 (E.D. Va. 2004) ............................................................... 22, 23

Page

*Tavory v. NTP, Inc.*,
    297 Fed. Appx. 976, 2008 WL 4710761 (Fed. Cir., Oct. 27, 2008) ....................................... 24
*Titan Atlas Mfg., Inc. v. Sisk*,
    2011 WL 3665122 (W.D. Va. Aug. 22, 2011) .................................................. 12, 14
*TomTom, Inc. v. AOT Systems GmbH*,
    2012 WL 4457730 (E.D. Va. Sept. 14, 2012)......................................................... 10
*Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*,
    770 F. Supp. 2d 24 (D.D.C. 2011) ...................................................................... 10, 11
*Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*,
    411 F.3d 1369 (Fed. Cir. 2005)............................................................................ 23
*Underwood Livestock, Inc. v. U.S.*,
    417 Fed. Appx. 934, 2011 WL 1196023 (Fed. Cir. 2011)....................................... 16
*Univ. of Colo. Found. v. Am. Cyndamid Co.*,
    196 F.3d 1366 (Fed. Cir. 1999).......................................................................... 23
*Vas-Cath, Inc. v. Mahurkar*,
    745 F. Supp. 517 (N.D. Ill. 1990) ............................................................ 15, 16, 24
*Wanlass v. Gen. Elec. Co.*,
    148 F.3d 1334 (Fed. Cir. 1998).......................................................................... 20
*Williams v. Basic Contracting Services, Inc.*,
    2009 WL 3756943 (S.D. W. Va., Nov. 9, 2009) ..................................................... 3
*Wollensack v. Reiher*,
    115 U.S. 96 (1885)................................................................................................ 21

**Federal Statutes**
35 U.S.C. § 100(d) ................................................................................................ 10
35 U.S.C. § 256 ............................................................................................ 1, 19, 21
35 U.S.C. § 262 .................................................................................................... 24
35 U.S.C. § 293 ..................................................................................... 1, 8, 9, 10, 11

**State Statutes**
Va. Code. Ann. § 8.01-328.1 ................................................................................. 12

**Federal Rules**
Rule 12(b)(2)................................................................................................ 8, 24, 25
Rule 12(b)(6)............................................................................................. 3, 9, 24, 25

# INTRODUCTION

This is an action for correction of inventorship of United States Patent No. 6,429,406 ("the '406 Patent"). Plaintiff Hedwig Lismont contends that he is the sole inventor of the subject matter of the '406 Patent, which covers a method for producing contact tips for welding or cutting torches. In his Complaint, Lismont brings three claims, all of which are based on the allegation that he is the inventor: (1) correction of inventorship under 35 U.S.C. § 256; (2) unjust enrichment; and (3) patent infringement. But there are several fatal flaws with Lismont's Complaint.

First, this Court lacks personal jurisdiction over the non-resident German Defendants, Abicor Unternehmensverwaltungs GMBH ("Abicor"), IBG Industrie-Betelingungs-GMBH & Co. KG ("IBG"), and Richard Sattler ("Sattler"). Lismont alleges that this Court has personal jurisdiction over these non-resident German Defendants under 35 U.S.C. § 293. But § 293 only confers jurisdiction over the "patentee" or legal title holder of the patent-in-suit. None of these Defendants own the '406 Patent, nor does Lismont contend that they do. Moreover, none of these Defendants have sufficient contacts with the forum state to satisfy due process and confer personal jurisdiction under Virginia's long-arm statute. Consequently, all of Lismont's claims against Abicor, IBG and Sattler should be dismissed.

In addition, Lismont's claims for correction of inventorship (Count I) and patent infringement (Count III) are precluded by the doctrine of collateral estoppel. Lismont's entire case relies on his contention that he is the inventor of the subject matter of the '406 Patent. But this exact issue was litigated and decided against Lismont by the German courts over nine years of protracted litigation, with a final judgment entered in 2009. The German courts concluded that Lismont was not the sole or even a joint inventor of the claimed subject matter. Since

Lismont has already litigated – and lost – the precise issue underlying this case, Counts I and III of Lismont's Complaint are precluded by the doctrine of collateral estoppel and should be dismissed.

These two claims are also precluded by the doctrine of laches.  The '406 Patent application was filed on February 15, 2000, and the patent issued on August 6, 2002, but Lismont did not file this present action until October 31, 2012.  Lismont sat on his claims for over ten years, even though he was fully aware of the '406 Patent.  Equity thus demands that Lismont's claims be barred by the doctrine of laches.  Counts I and Count III of Lismont's Complaint should be dismissed for this additional reason.

Lismont's claim for unjust enrichment (Count II) should also be dismissed.  Lismont's unjust enrichment claim is flawed for two reasons: (1) it is barred by the applicable three-year statute of limitations; and (2) it is preempted by federal patent law.  Lismont has been aware of the '406 Patent application since at least 2001, but did not file the current action until October 31, 2012, well beyond the three-year-limitations period.  And even if Lismont's claim was timely (which it is not), it is preempted by federal patent law.  It is clear from the face of his Complaint that Lismont's unjust enrichment claim is based entirely on his allegation that he is the inventor of the patent-in-suit.  This is a basic question of federal patent law, and is thus preempted. Consequently, Count II of Lismont's Complaint should be dismissed.

For all of the reasons above, Lismont's Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### The '406 Patent

The '406 Patent covers a method for producing contact tips (sometimes referred to as flow nozzles) for welding or cutting torches.  (Ex. A, '406 Patent, Col 1, Line 40 – Col 2, Line

2

59.)  In the past, contact tips were fabricated from drawn, or extruded, copper materials and alloys, which was an expensive and complex process.  (*Id.*)  The '406 Patent discloses a method of producing contact tips by using "deep-drilling" techniques, which produce contact tips by drilling an opening or openings into a solid, semi-finished material.  (*Id.*)  This technique allowed contact tips to be made more cheaply, and with a broader range of materials. (*Id.*)

This deep-drilling process for producing contact tips was successfully developed at Binzel-Germany in the 1990s.  (Compl. ¶¶ 14-18.)   Binzel-Germany filed a German patent application covering the deep-drilling process on August 30, 1997.   (Ex. B, German Patent.) The claimed invention described in the patent application was a contact tip for a welding or cutting torch which includes at least one internal opening for guiding and engaging at least one welding electrode, wherein the internal opening is produced by deep drilling in a bar-shaped semi-finished product, such as solid material.  (Ex. C, 12/18/2008 German Op. 6 U 136/07, at 5-6.)[1][2]  The application identified Binzel-Germany as the applicant and owner, and Sattler as the inventor.  (Ex. B, German Patent.)  The German Patent issued on December 10, 1998.  (*Id.*)

---

[1]  This Court can take judicial notice of the German pleadings and other public records, especially since Lismont has referenced the German opinions in his Complaint.  *See Field Auto City, Inc. v. General Motors Corp.*, 476 F. Supp. 2d 545, 547 n. 2 (2007) (consideration for a 12(b)(6) motion is not confined to the four corners of the complaint, noting that pleadings and documents referred to in the Plaintiff's complaint were properly subjected to judicial notice and could be considered).  *See also International Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006) (court may take judicial notice of facts from a prior judicial proceeding); *Williams v. Basic Contracting Services, Inc.*, 2009 WL 3756943, *2 (S.D. W. Va., Nov. 9, 2009) (court "may take judicial notice of facts which are not subject to reasonable dispute, including various types of official documents and records.")

[2] The most relevant German pleadings are attached with corresponding English translations and certifications that the translations are true and accurate.

On August 13, 1998, Binzel-Germany filed a related PCT Application for the deep-drilling method for making contact tips. (Compl. ¶ 26.)[3]  The PCT Application was published on March 11, 1999. (Ex. A, '406 Patent.)  The PCT Application resulted in several patents, including (1) the '406 Patent; (2) Japanese Patent 2001504080; (3) Chinese Patent 1138607; (4) European Patent 1 007 264 (B1). (Compl. ¶ 26.)  The European Patent was granted on May 6, 2003, and was subsequently registered as: (a) Germany Patent 599 08 711; (b) Belgian Patent 1 007 264; (c) French Patent 1 007 264; (d) British Patent 1 007 264; (e) Italian Patent 1 007 264; (f) Netherlands Patent 1 007 264; and (g) Spanish Patent 2 201 532. (*Id.*)  Binzel-Germany was identified as the owner of all of these patents.  Sattler was identified as the inventor.

**German Litigation on the Issue of Inventorship**

On October 13, 2000, over three years after the German patent application was filed and several months after the United States patent application was filed, Lismont sued Binzel-Germany in the Regional Federal Court in Frankfurt, Germany. (Ex. D, First German Complaint.)[4]  Lismont claimed that he was the sole inventor of the claimed subject matter, and requested a transfer of ownership of the German patent. (Compl. ¶ 31; Ex. D, First German Complaint.)[5]

---

[3] The PCT Application is a common application which can be used as a basis for patent applications in any countries which are signatories to the PCT Treaty, which includes the United States and most European countries.

[4] Lismont filed a second German action in December 2002.  In this second action, Lismont requested discovery regarding damages related to his inventorship claim set forth in the first cause of action. (Ex. E, Second German Complaint.)  This action was filed against Binzel-Germany, as well as Sattler and Abicor.

[5] German law, like U.S. law, provides a claim for transfer of ownership of patents based on inventorship.  Section 8 of the German Patent Act provides for such a claim:

> An entitled person whose invention has been applied for by a person not so entitled may require the patent applicant to surrender to him the right to the grant of a patent. If the patent application has already resulted in a patent, he may require the patentee to assign the patent to him. Such right may only be asserted by an action at law within two years

Both sides submitted briefs and evidence to the Regional Court.  (Ex. F, Petry Decl. at ¶ 7.)  On March 7, 2001, the Regional Court ruled against Lismont on his claim of inventorship. (*Id.*)  Lismont thereafter appealed to the German Federal Court of Appeals, but this appeal was also rejected on August 3, 2003.  (*Id.*)  The Court of Appeals ruled that Lismont's evidence, at best, showed that he might be a co-inventor of the deep-drilling process.  (*Id.*)  The Court of Appeals held that Lismont would have to show that he was the sole inventor in order to justify a transfer of ownership and, therefore, his claim failed as a matter of law.  (*Id.*)  Lismont sought leave to appeal to the Federal Supreme Court of Germany.  (*Id.*)

The German Supreme Court took the case and, on April 11, 2006, reversed and remanded the case to the Court of Appeals.  (*Id.* at ¶ 8.)  The Supreme Court held that, even as a co-inventor, Lismont might be entitled to some portion of the patent rights covering the deep drilling process.  Therefore, it remanded the case to the Court of Appeals to determine if there was evidence to show that Lismont was a co-inventor (as opposed to the sole inventor).  (*Id.*)

The Court of Appeals investigated further.[6]  It took evidence and heard testimony from several witnesses on the issue of who had invented the deep-drilling process.  (*Id.* at ¶ 9.) Lismont was given the opportunity to present any evidence he had to prove his inventorship, and several of the witnesses heard from were produced by him.[7]  (*Id.*)  Binzel-Germany also

---

after publication of the grant of the patent (Section 58(1)), subject to the fourth and fifth sentences. If the injured person has filed opposition on the grounds of usurpation (Section 21(1)3), he may bring an action within one year of the final conclusion of the opposition proceedings. The third and fourth sentences shall not apply if the patentee had not acted in good faith in obtaining the patent.

(Ex. F, Petry Decl. at ¶ 4.)  As in U.S. law, German law places the burden of proof on the claimant to show that the claimant is the true inventor of the claimed subject matter. (*Id.* at ¶ 5.)

[6] Unlike the appellate courts in this country, the courts of appeal in Germany can review and investigate factual, as well as legal, issues.  (Ex. F, Petry Decl. at ¶ 9.)

[7] Some of these witnesses indicated that, to their knowledge, Binzel had not discussed deep-drilling prior to Lismont's arrival.  Portions of their testimony are quoted in the instant

produced evidence.  This evidence showed that as early as 1993, well before Lismont was

consulted, Sattler suggested that contact tips should be produced by drilling in solid material in

an effort to reduce Binzel-Germany's production costs.  (Ex. C, 12/18/2008 German Op. 6 U

136/07, at 9.)  It then occurred to Sattler that the method of drilling with double-lip drills and

with pressure flushing at high speeds could be applied for purposes of production of the contact

tips.  (*Id*. At 10.)  Sattler was aware of this method because of his previous work on production

of piston rods for hydraulic cylinders.  (*Id*.)

The evidence further showed that subsequently Binzel-Germany decided to hire an

external advisor to work on the details of how the deep-drilling solution would be achieved.  (*Id*.)

In 1996, Binzel-Germany was introduced to Lismont.  (Compl. ¶ 14.)  Lismont was hired by

Binzel-Germany as a consultant to work on the deep-drilling project.  (Ex. C, 12/18/2008

German Op. 6 U 136/07, at 10.)

At the conclusion of this trial, the Court of Appeals – after weighing the evidence

produced by both sides – ruled that Lismont had not produced sufficient evidence to show either

that he was the sole inventor or the co-inventor of the deep-drilling process:

> The Claimant has not been able to provide the evidence, **which it
> was incumbent on him to provide**, that he is the inventor or in
> any event the joint inventor of the doctrine of the patent in suit.

(Ex. C, 12/18/2008 German Op. 6 U 136/07, at 5 (emphasis added).)

In its opinion, the Court repeatedly stated that the evidence did not support Lismont's

claim that he developed the subject matter claimed in the patent-in-suit.  (*See* Ex. C, 12/18/2008

---

Complaint as support for plaintiff's inventorship.  (*See e.g.,* Compl. ¶ 16.)  However, as the
Court pointed out, most of these witnesses were not in technical positions, and none of them had
any concrete knowledge or understanding of the deep-drilling process.  The Court concluded that
this testimony was not reliable, especially given the fact that the witnesses, on cross-
examination, were unsure of who first came up with the concept of deep-drilling contact tips.
(Ex. G, 12/18/2008 German Op. 6 U 80/01, at 6-8.)

German Op. 6 U 136/07; Ex. G, 12/18/2008 German Op. 6 U 80/01.) [8] While the Court carefully recited the evidence presented by both sides (including the evidence produced by Lismont which is repeated in the instant Complaint), the Court expressly stated that Lismont was not able to "provide the evidence, which was incumbent on him to provide, that he is the inventor or in any event the joint inventor of the doctrine of the patent in suit." (Ex. C, 12/18/2008 German Op. 6 U 136/07, at 5.) The Court noted that Lismont did not record his invention in written form and could not declare when or where he previously got the patent idea for the invention. (*Id.* at 8-9, 11.) The Court further stated that based on the fact that the subject matter was a basic idea (producing contact tips through deep-drilling) and did not involve detailed steps as to how to produce the product, "it was improbable that the invention protected by the patent in suit could be the result of different creative contributions by joint inventors." (*Id.* at 7.) Lismont's inventorship claims were thus dismissed. (*See* Ex. C, 12/18/2008 German Op. 6 U 136/07; Ex. G, 12/18/2008 German Op. 6 U 80/01.)

Lismont tried to appeal the Appeal Court's decision one last time. (Ex. F, Petry Decl. at ¶ 10.) But the German Supreme Court rejected Lismont's last appeal on November 25, 2009. (*Id.*) Finally, after nine years of highly contested litigation, Lismont's claim of inventorship was defeated.[9]

---

[8] Because Lismont filed two actions in Germany based on the same claim—that he was the true inventor of the patent-in-suit—the German Court of Appeals issued two opinions. (*See* Ex. B, 12/18/2008 German Op. 6 U 136/07; Ex. G, 12/18/2008 German Op. 6 U 80/01.) In both opinions, the German Court of Appeals recounts the evidence and its holding that Lismont was not the sole inventor or co-inventor of the patent-in-suit.

[9] Lismont claims that this decision could still be reopened because of an independent action he has filed with the European Court of Human Rights. (Compl. ¶ 31.) This is not an appeal of the German Court's decision, which is final and unappealable. (Ex. F, Petry Decl. at ¶¶ 10, 11.) Rather, it is an independent action, claiming essentially that Mr. Lismont was not given basic due process in violation of his human rights. (*Id*. at ¶11.) Given Lismont's extensive access to the German courts, including a full opportunity to present any evidence he chose on the issue of

Three years later, on October 31, 2012, Lismont filed this action, making the identical claim of ownership of the patented deep-drilling process.  (Dkt. No. 1.)

## ARGUMENT

Lismont's Complaint should be dismissed in its entirety.  First, this Court does not have personal jurisdiction over the German Defendants Abicor, IBG and Sattler. The non-resident German Defendants are not patentees under Section 293 and do not have sufficient contacts with the forum state to permit this Court to exercise personal jurisdiction over them.  Second, Lismont's correction of inventorship and patent infringement claims are precluded by the doctrines of collateral estoppel and laches.  The only issue before this Court is whether Lismont is the sole inventor of the '406 Patent.  But this very issue was litigated in Germany from 2000-2009, and the German court unequivocally concluded that Lismont was not the sole inventor or the co-inventor of the claimed subject matter.  And, despite having knowledge of the application related to the '406 Patent in 2001, Lismont did not file the current action until October 31, 2012, more than 11 years later.  Finally, Lismont's claim for unjust enrichment is barred by the applicable three-year statute of limitations or, in the alternative, is preempted by federal patent law which controls the question of patent inventorship.  Consequently, this Court should grant Defendants' motion to dismiss and dismiss Lismont's Complaint in its entirety.

## I.      Standard of Review Under Federal Rule of Civil Procedure 12(b)(2) and (6)

Rule 12(b)(2) permits a defendant to move for dismissal if the Court lacks personal jurisdiction over the named defendants.  Fed. R. Civ. P. 12(b)(2). The burden is on Lismont to

---

inventorship, it is highly unlikely that Lismont can succeed on any claim that he was denied due process.

make a *prima facie* showing of a sufficient jurisdictional basis.  *See Med. Solutions, Inc. v. C Change Surgical, LLC*, 541 F.3d 1136, 1142 (Fed. Cir. 2008).  And personal jurisdiction must be shown as to each defendant individually.  *See Calder v. Jones*, 465 U.S. 783, 784 (1984).

Rule 12(b)(6) permits a defendant to move for dismissal of a claim if the plaintiff has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).  While the court must construe the facts in the light most favorable to the plaintiff when considering a motion to dismiss, "the court is not obligated to accept the complaint's legal conclusions."  *Nielsen Co. (US), LLC v. comScore, Inc.,* 819 F. Supp. 2d 589, 592 (E.D. Va. 2011) (citing *Schatz v. Rosenberg*, 942 F.2d 485, 489 (4th Cir. 1991)).  Accordingly, dismissal pursuant to Rule 12(b)(6) is appropriate when there is no basis on which relief can be granted.  *Nielsen*, 819 F. Supp. 2d at 592.

## II.   This Court lacks personal jurisdiction over Defendants IBG, Abicor and Sattler.

This Court lacks personal jurisdiction over IBG, Abicor and Sattler for two reasons: (1) none of these Defendants are "patentees" under Section 293; and (2) none of these Defendants have sufficient contacts with the forum state to allow this Court to exercise personal jurisdiction under Virginia's long-arm statute without violating due process.  Accordingly, Lismont's claims against IBG, Abicor and Sattler should be dismissed for lack of personal jurisdiction.

### A.   Section 293 does not provide this Court with personal jurisdiction over Defendants IBG, Abicor and Sattler because they are not "patentees" under the statute.

Plaintiff alleges that this court has personal jurisdiction over the Defendants under the patent long-arm statute, 35 U.S.C. § 293.  The exercise of personal jurisdiction under Section 293, however, is limited to patentees.  *See TomTom*, *Inc. v. AOT Systems GmbH*, 2012 WL

4457730, *2 (E.D. Va. Sept. 14, 2012) (*citing Adm'rs of Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 27-28 (D.D.C. 2011)).  A "patentee" is defined as "the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). The Federal Circuit has thus held that:

> The entity to whom the grant of a patent is made by the PTO [or that entity's successor in title] holds the "legal title" to the patent. The legal title holder **may or may not be the inventor, according to whether provision has been made by the inventor for issuance to an assignee.**  Thus defined, legal title holder is synonymous with 'patentee' as defined by 35 U.S.C. § 100(d).

*Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 n. 2 (Fed. Cir. 1991) (emphasis added) (internal citations omitted).  *See also Fitroil, N.A., Inc. v. Maupin*, 178 F.3d 1310 (Table), 1998 WL 851131, *2 (Fed. Cir. Dec. 3, 1998).[10]  Consequently, "Plaintiffs cannot obtain jurisdiction pursuant to Section 293 where the defendant is not the owner or the assignee of the patent at issue, and is therefore not a patentee covered by the statute." *TomTom,* 2012 WL 4457730, at *2 (*quoting Ipsen Pharma*, 770 F. Supp. 2d at 27).

Sattler is not a patentee under the statute, as he does not own, and never has owned, the '406 Patent.  (Ex. H, Schubert Decl. at ¶ 4; Ex. I, USPTO Public Record and Assignment.)  As the Federal Circuit has stated, whether the inventor is considered a patentee depends on what provision has been made by the inventor for issuance to an assignee.  *See Arachnid, Inc.* 939 F.2d at 1578 n. 2.  Sattler assigned any interest he had in the '406 Patent to Binzel-Germany on January 26, 2000, as part of the application for the patent.  (Ex. I, USPTO Public Record and Assignment.)  The patent was thus issued to Binzel-Germany, not Sattler.  Sattler is not the legal

---

[10] The law of the Federal Circuit applies to determine whether the court has personal jurisdiction over the Defendants. *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004) ("[i]n patent-related cases filed in the Eastern District of Virginia . . . Federal Circuit law governs the substantive issue of whether the court may constitutionally exercise personal jurisdiction over a particular defendant")

title holder to the '406 Patent, is not a patentee for purposes of Section 293, and this Court lacks jurisdiction over him.

The same is true for IBG and Abicor.  (Ex. H, Schubert Decl. at ¶ 4.)  Indeed, Lismont does not even allege that IBG or Abicor are the owners or successors of the '406 Patent.  Rather, Lismont merely alleges that IBG and Abicor are related to Binzel-Germany.  (Compl. ¶¶ 10-11.) But this does not bring them within the statutory definition of patentee under Section 293 and this Court's jurisdiction.  *See Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d at 27-28 (denying jurisdiction as to parent company of wholly owned subsidiary patent assignee).  Neither Abicor nor IBG are legal title holders of the '406 Patent.  Consequently, Section 293 provides no basis for personal jurisdiction over these German Defendants.

The '406 Patent identifies Binzel-Germany as its owner, not Sattler, not IBG, and not Abicor.  Consequently, Binzel-Germany is the patentee, and thus the only party over whom this Court has jurisdiction under Section 293.[11]

> ### B. This Court lacks personal jurisdiction, either general or specific, over the non-resident German Defendants IBG, Abicor, and Sattler.

To determine whether personal jurisdiction exists over an out-of-state defendant generally requires a two-part inquiry: (1) whether Virginia's long-arm statute permits service of process; and (2) whether assertion of personal jurisdiction violates due process. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1017 (Fed. Cir. 2009); *In re Pabst Licensing GMBH & Co. Litigation*, 590 F. Supp. 2d 94, 98 (D. D.C. 2008).  The Virginia long-arm statute provides for a court to "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth . . . ."  Va. Code. Ann. § 8.01-328.1.  Consequently, "[b]ecause Virginia's

---

[11] Binzel-Germany does not contest the jurisdiction of this Court.

long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Titan Atlas Mfg., Inc. v. Sisk*, 2011 WL 3665122, *6 (W.D. Va. Aug. 22, 2011) (quoting *Sportrust Assocs. Int'l, Inc. v. Sports Corp.,* 304 F. Supp. 2d 789, 792 (E.D. Va. 2004)); *see also Convergence Technologies (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 634 (E.D. Va. 2010).

Due process requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Titan Atlas*, 2011 WL 3665122 at *6 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  There are two types of "minimum contacts" that give rise to personal jurisdiction: (1) general personal jurisdiction; and (2) specific personal jurisdiction.  The non-resident German Defendants, IBG, Abicor, and Sattler, do not have contacts of sufficient number or character to confer either general or specific personal jurisdiction over them in Virginia.

1. *The Eastern District of Virginia lacks general personal jurisdiction over the non-resident German Defendants IBG, Abicor and Sattler.*

General personal jurisdiction may be asserted over a non-resident defendant only if there are "continuous corporate operation[s] within a state [that are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993) (quoting *Int'l Shoe Co.* 326 U.S. at 318); *see also Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200 (Fed. Cir. 2003).  Sufficient minimum contacts for the constitutional exercise of general personal jurisdiction exist where a non-resident corporation has substantial contacts with the forum state that are thus "continuous and systematic." *Reynolds & Reynolds Holdings,* 301 F. Supp. 2d at 550.

12

Lismont's Complaint says nothing about the activities or contacts by the non-resident German Defendants that purportedly subject them to jurisdiction in Virginia. (Compl. ¶¶ 4-6.) Accordingly, this Court cannot establish general personal jurisdiction over the non-resident German Defendants IBG, Abicor, or Sattler, based on Lismont's Complaint. His claims against these defendants should be dismissed for lack of jurisdiction.

Even if Lismont's Complaint properly addressed the question of contacts by the non-resident German Defendants with Virginia, those contacts would still be insufficient to confer general personal jurisdiction. Neither IBG nor Abicor have sufficient contact with the State of Virginia. Abicor is only a financial holding company; it is not an operational business. (Ex. H, Schubert Decl. at ¶ 5.) The same is true for IBG. IBG is merely the holding company for Abicor and Binzel-Germany. (*Id.* at ¶ 6.) Neither of these companies has facilities, sells products, or advertises in the United States. (*Id.* at ¶¶ 5-6.) They do not have continuous and systematic contacts with the United States, let alone Virginia. (*Id.*)

Likewise, Sattler does not have sufficient contacts with Virginia that justifies this Court's jurisdiction. First, Sattler retired in 2008 and has not been active in the Binzel business since then. (Ex. H, Schubert Decl. ¶ 7.) And even before his retirement, when Sattler visited the United States, those visits were generally to Alexander Binzel Corporation ("Binzel-US"), which is not located in Virginia. (*Id.*) This limited activity clearly does not meet the general personal jurisdiction threshold—substantial contacts with the forum state that are systematic and continuous.

The exercise of general personal jurisdiction over these non-resident German Defendants is precluded by the notions of "fair play" and "substantial justice" dictated by the United States

Constitution.  Consequently, due process precludes this Court exercising general personal jurisdiction over IBG, Abicor, and Sattler.

> 2.   *IBG, Abicor, and Sattler do not have the requisite specific contacts with Virginia to establish specific personal jurisdiction.*

Because this Court lacks general personal jurisdiction, Lismont must show specific personal jurisdiction in order to proceed against German Defendants IBG, Abicor, and Sattler. Specific personal jurisdiction must be based on activities that arise out of or relate to the cause of action.  *Titan Atlas*, 2011 WL 3665122, at *7.  The Federal Circuit applies a three-prong test to determine specific jurisdiction: whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair.  *See Arko Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (*citing Burger King v. Rudzewicz*, 471 U.S. 462, 471-77 (1985)); s*ee also Reynolds & Reynolds*, 301 F. Supp. 2d at 552 (*citing 3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998)). The defendant's actions must have been "directed at the forum state in more than a random, fortuitous, or attenuated way."  *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir. 1997).  Indeed, the defendant's connection with Virginia must be such that it should reasonably anticipate being haled into court there.  *Richardson v. William Sneider and Associates*, *LLC*, 2012 WL 3525625, *4 (E.D. Va. July 24, 2012).

Lismont's Complaint fails to make the requisite showing of specific personal jurisdiction. Lismont's Complaint fails to identify any "purposeful acts" by the non-resident German Defendants IBG, Abicor, or Sattler that give rise to his present claims.  (*See* Compl. ¶¶ 4-6, 9-12.)  None of these Defendants participated in the prosecution of the '406 Patent.  (Ex. A,'406 Patent; Ex. H, Schubert Decl. at ¶ 8.)  Consequently, these non-resident German Defendants did

nothing within this state to allow them to be haled into its court.   This Court also lacks specific jurisdiction over these Defendants, and Lismont's claims against them must be dismissed.

### III.   Counts I and III of Lismont's Complaint are barred by the doctrine of collateral estoppel because Lismont previously litigated the issue of inventorship for nine years in Germany.

Lismont's inventorship claim is barred by the doctrine of collateral estoppel.  The foundational issue before this Court is who invented the claimed subject matter.  None of Lismont's claims can succeed unless he can show that he is the true inventor.  But this very issue was litigated in Germany for nine years. After a full trial on this issue, the German court concluded that Lismont was not the sole inventor or the co-inventor.  Consequently, because the issue of inventorship was previously litigated, Lismont is precluded from litigating the issue again here.  He does not get another bite of the apple.

Collateral estoppel, or issue preclusion, precludes a party from relitigating issues previously determined by a competent foreign court.  *See Vas-Cath, Inc. v. Mahurkar*, 745 F. Supp. 517, 525-27 (N.D. Ill. 1990), *rev'd on other grounds*, 935 F.2d 1555 (Fed. Cir. 1991) (giving preclusive effect to a Canadian court's determination of patent inventorship).  "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources."  *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329 (1971).  Indeed, permitting repeated litigation of the same issue "reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure."  *Id.*  Patent litigation should thus "not be allowed to become a war of attrition, in which after the conclusion of one battle parties move on to another and duplicate the

engagement." *Vas-Cath, Inc.*, 745 F. Supp. at 525.  Because of these principles, courts routinely hold that once a party litigates an issue, it is estopped from litigating it again.  *See Stephen Slesinger, Inc. v. Disney Enters., Inc.*, -- F.3d --, 2012 WL 6634221, *3-4 (Fed. Cir. Dec. 21, 2012); *Underwood Livestock, Inc. v. U.S.*, 417 Fed. Appx. 934, 937-38, 2011 WL 1196023 (Fed. Cir. 2011); *Shell Petroleum, Inc. v. U.S.*, 319 F.3d 1334, 1338-39 (Fed. Cir. 2003); *In re Freeman*, 30 F.3d 1459, 1469 (Fed. Cir. 1994).

In *Vas-Cath*, the Northern District of Illinois considered the very same issue presented in this case:  whether a foreign judgment on the issue of inventorship should be given preclusive effect.  In that case, the parties had previously litigated the inventorship issue in Canada, leading to a prior Canadian judgment holding that the plaintiff was not the inventor of a patented invention.  745 F. Supp. at 525.  Undeterred, the plaintiff filed a new "change of inventorship" action in Illinois on the U.S. counterpart of the Canadian patent.  But the District Court dismissed the action on the basis of collateral estoppel.  The court recognized that "conservation of resources is the principal objective of the law of preclusion, and that is a vital objective when costs are high, the more so when similar patents have been secured in many of the industrial countries."  *Id.*  The court emphasized that the factual finding that the defendant in the United States litigation was the inventor of the patented device was "as relevant to the inventorship of the U.S. '968 patent as it [wa]s to the Canadian '508.  **Who is the inventor and who is copier is a staple question in any patent system**."  *Id.* at 527 (emphasis added).  Therefore, the court held that the plaintiff was estopped from relitigating the issue of inventorship.  *Id.*

The same is true here.  Lismont should be precluded from relitigating the issue of inventorship because it was previously litigated in Germany for nine years.  In his Complaint, Lismont alleges that he is the "sole inventor of the subject matter disclosed and claimed in the

'406 Patent and all related foreign patents and applications." (Compl. ¶ 11.)   This is precisely

the issue Lismont raised in the German courts—who invented the subject matter disclosed in the

patents.   That precise issue was actually litigated for a period of nine years, including two

separate appeals to the highest German court.   (*See* Ex. C, 12/18/2008 German Op. 6 U 136/07;

Ex. G, 12/18/2008 German Op. 6 U 80/01.)   The factual findings made by the German courts

were made after due consideration of the evidence.   The German court considered the documents

introduced, heard testimony, and was in a position to judge the credibility of the witnesses.   After

careful deliberation, the German court expressly held that Lismont had "not been able to provide

the evidence, which it was incumbent on him to provide, that he is the inventor or in any event

the joint inventor of the doctrine of the patent in suit."   (Ex. C, 12/18/2008 German Op. 6 U

136/07, at 5.)   The German proceedings were fundamentally fair.   Lismont was provided with

ample opportunity to present both documents and testimony to the German courts in support of

his claim that he was the inventor of the '406 Patent.   And he did.   But the evidence he submitted

was insufficient to carry his burden to prove inventorship.   (*See* Ex. C, 12/18/2008 German Op. 6

U 136/07, at 5; Ex. G, 12/18/2008 German Op. 6 U 80/01, at 3.)   Lismont should not be able to

present the same evidence to a different court in hope that he gets a different result.

   Lismont may argue that German law is different from the law of the United States, and

this should prevent issue preclusion.   But the "staple question" of who is the inventor of the

patent is the same under the law of both countries.   The laws of both countries provide for a

claim to establish inventorship, or to transfer ownership of a patent to a "true inventor."   Under

German law, "an entitled person whose invention has been applied for by a person not so entitled

. . . may require the patentee to assign the patent to him."   (Ex. F, Petry Decl. at ¶ 4.)   To prove

this, Lismont was required to provide "evidence, which it was incumbent on him to provide, that

he is the inventor or in any event the joint inventor of the doctrine of the patent in suit."  (Ex. C, 12/18/2008 German Op. 6 U 136/07, at 5.)

The same is true here.  Under the law of the United States, it is presumed that a patent's named inventors are the true and only inventors.  *Arcomed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1379 (Fed. Cir. 2001).  Consequently, in order to change inventors, it will be incumbent on Lismont to show with "clear and convincing" evidence that he is the true inventor of the claimed subject matter.  *See Stern v. The Trustees of Columbia Univ.,* 434 F.3d 1375, 1377 (Fed. Cir. 2006); *Caterpillar, Inc. v. Sturman Industries, Inc*., 387 F.3d 1358, 1377 (Fed. Cir. 2005); *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1461 (Fed. Cir. 1998).  In fact, Lismont's burden of proof is greater in the United States, where he needs to present "clear and convincing evidence" that he is the true inventor, not merely the preponderance of evidence standard required under German law.  As stated by the court in *Vas-Cath,* this "staple question" is the same in any patent system—who invented the patent.

The only way that Lismont can prevail in this case is to prove that he invented the subject matter claimed in the '406 Patent.  But the German court already decided this issue. After reviewing the evidence, the German court concluded that Lismont was not the inventor or even a joint inventor of the claimed subject matter.   Consequently, because the issue of inventorship was previously determined in the German courts, Lismont is precluded from litigating the same issue again here under the doctrine of collateral estoppel.

## IV.	Lismont's correction of inventorship and patent infringement claims are barred by the doctrine of laches

Lismont's correction of inventorship and patent infringement claims are also barred by the doctrine of laches. Although the '406 Patent application was filed on February 15, 2000 and issued on August 6, 2002, Lismont did not file this present action until October 31, 2012, more

than ten years after the '406 Patent issued.  This delay is manifestly unreasonable and
unquestionably prejudiced Defendants.

### A.      Lismont's correction of inventorship claim is barred by laches.

Laches is an equitable bar to an action arising from a party's neglect or delay in bringing
a suit which caused prejudice to the adverse party.  *A.C. Aukerman Co. v. R.L. Chaides Const.
Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).  A correction of inventorship, or § 256 claim, may be
barred by the application of laches.  *See e.g. Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201
(1893); *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008) ("laches
is an equitable defense that may bar an inventorship claim"); *Stark v. Advanced Magnetics, Inc.*,
29 F.3d 1570, 1573 (Fed. Cir. 1994) ("equity disfavors undue and prejudicial delay by a person
who may have an interest in the property of another"); *FMC Corp. v. Guthery*, 2009 WL
1033663, *3 (D. N.J. Apr. 17, 2009) ("in addition to patent infringement challenges, inventorship
claims are also subject to the laches defense").

To establish laches, generally a defendant would have to demonstrate "(1) an
unreasonable and inexcusable delay in bringing suit and (2) material prejudice caused by the
delay."  *Humanscale Corp. v. CompX Int'l Inc.*, 2010 WL 3222411, *8 (E.D. Va. Aug. 16, 2010)
(*citing Aukerman,* 960 F.2d at 1028).  However, "[a] delay of more than six years after actual or
constructive knowledge of the defendant's alleged infringing activity **raises a presumption that
the plaintiff's actions are unreasonable, inexcusable, and prejudicial.**"  *Id.* at *9 (*citing
Wanless v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) (emphasis added)).  *See
Serdarevic*, 532 F.3d at 1358 ("a delay of more than six years after the omitted inventor knew or
should have known of the issuance of the patent will produce a rebuttable presumption of
laches") (internal quotations omitted); *Aukerman*, 960 F.2d at 1035 (the defense of laches is
made out upon proof by the accused infringer that the patentee delayed filing suit for six years

19

after actual or constructive knowledge of the claim).   The presumption thus allows this court to "infer unreasonable delay and resulting prejudice." *FMC Corp.*, 2009 WL 1033663 at *3.

The '406 Patent issued on August 6, 2002.  (Ex. A, '406 Patent.)  And there is no question that Lismont was aware of the patent application as early as February 2001.  In correspondence to the Regional Court of Frankfurt, Lismont referenced the United States patent application: "the witness Sattler has applied for the patent **that is in dispute here in the United States in his own name as inventor**."  (Ex. J, 2/12/2001 Ltr. to German Court (emphasis added).)  Despite his knowledge of the '406 Patent, Lismont did not file this litigation until October 2012, more than ten years after the patent issued.

Moreover, even after the Germany litigation was completed, Lismont waited an unreasonable amount of time.  The German Supreme Court rejected Plaintiff's final appeal on November 25, 2009.  (Ex. F, Petry Decl. ¶ 10.)  Lismont then waited another three years before filing this action.  Such delay is entirely unjustified.[12]

"Equity disfavors undue and prejudicial delay by a person who may have an interest in the property of another." *Stark*, 29 F.3d at 1573.  Lismont's unreasonable delay creates a presumption that his actions are unreasonable, inexcusable, and prejudicial.  Consequently, equity demands that Lismont's claims be barred by the doctrine of laches.  Undeniably, to allow

---

[12] Lismont may argue that his delay was "excused" by his pursuit of the German litigation.  But other litigation is not an automatic defense to laches.  *See Am. Home Prods. Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1123 (6th Cir. 1973) ("we reject [the] suggestion that the existence of other litigation automatically excuses any delay in bringing suit"); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996) (applying laches to bar plaintiff's claim despite plaintiff's involvement in other patent litigation during the laches period).  Nor can this excuse cover the three-year delay after the conclusion of the German litigation.

Lismont to proceed with this litigation would eviscerate the protection of laches. [13]  Count I of Lismont's Complaint should be dismissed.

### B.      Lismont's patent infringement claim is likewise barred by laches because of Lismont's unreasonable delay.

Like his §256 claim, Lismont's patent infringement claim is also barred by laches.  The United States Supreme Court and the Federal Circuit have long recognized the defense of laches to patent infringement claims as well.  *See Lane & Bodley*, 150 U.S. at 201; *Wollensack v. Reiher*, 115 U.S. 96, 100-01 (1885); *Mahn v. Harwood*, 112 U.S. 354, 363 (1884); *Aukerman* 960 F.2d at 1028.  "Courts faced with patent infringement actions 'borrowed' the six-year damage limitation period in the patent statute now set out in section 286, as the time period for giving rise to a rebuttable presumption of laches." *Aukerman*, 960 F.2d at 1035; *Olympia Werke Aktiengesellschaft v. General Elec. Co.*, 712 F.2d 74, 76-77 (4th Cir. 1983).   This six-year laches period is "consonant with the mainstream of the law." *Aukerman,* 960 F.2d at 1035. Thus, in a patent infringement claim, a defendant establishes laches by showing that the purported patentee delayed filing suit for six years after actual or constructive knowledge of the claim.

As discussed above, Lismont had knowledge of the '406 Patent in 2001.  The '406 Patent issued in August 2002.  Yet, Lismont waited for more than ten years before he filed this action for patent infringement.  Accordingly, the doctrine of laches demands that Lismont's patent infringement claim also be dismissed.

---

[13] The prejudice created by the passage of time is manifest here, and is ample justification for the presumption.  Even the German court noted that several witnesses were no longer clear on the details of what happened when.  (Ex. C, 12/18/2008 German Op. 6 U 136/07, at 6-9.)  The operative facts occurred in a period of up to twenty years ago, from 1993 – 1997.  It is unlikely that memories have improved since the German court heard testimony on the issue several years ago.

# V.     Lismont's unjust enrichment claim is barred by the applicable statute of limitations or, in the alternative, preempted by federal patent law.

In Count II of this Complaint, Lismont brings a common law claim for unjust enrichment. (Compl. ¶¶ 48-58.)  Lismont alleges that because of Defendants' purported failure to identify Lismont as the sole inventor and rightful owner of the subject matter claimed in the '406 Patent and all related foreign patents, Defendants have been unjustly enriched.  (Compl. ¶ 48.)  There are two fatal flaws to Lismont's argument.  First, Lismont's unjust enrichment claim is barred by a three-year statute of limitations.  Second, Lismont's claim is based entirely on federal patent law, and is thus preempted.

## A.     Lismont's unjust enrichment claim is barred by the three-year statute of limitations.

A claim for unjust enrichment must be brought within three years.  *East West LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012); *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.,* 299 F. Supp. 2d 565, 576 (E.D. Va. 2004); *GIV, LLC v. International Business Machines Corp.,* 2007 WL 1231443, *3 (E.D. Va. April 24, 2007) (internal citations omitted).[14]  "An unjust enrichment action accrues when the unjust enrichment actually occurs, . . . not when a party knew or should have known of the unjust enrichment." *Tao*, 299 F. Supp. 2d at 576 (internal citations omitted).

The filing of the patent application occurred in 1998.  (Compl. ¶¶ 26, 38, 39.)  Here, the accrual of Lismont's unjust enrichment claim is far beyond the three-year limitations period. Lismont contends that it was Defendants' filing of the '406 Patent application and failure to

---

[14] As a federal court exercising supplemental jurisdiction over Lismont's state claim for unjust enrichment, the Court applies the choice of law rules of the forum state.  *See East West, LLC,* 873 F. Supp.2d at 727.  In Virginia, the statute of limitations is a procedural issue governed by Virginia law.  *Id.*

identify Lismont "as the sole inventor and rightful owner of the subject matter claimed in the

'406 Patent and all related foreign patents and applications," that resulted in unjust enrichment.

(Compl. ¶ 48.)  Taking Lismont's allegations as true, Defendants' wrongful acts, if any, occurred

in 1998, well outside the three-year limitations period.  Accordingly, Lismont's unjust

enrichment claim should be dismissed.[15]

### B.      Federal patent law controls the question of inventorship, and thus preempts Plaintiff's unjust enrichment claim.

Even if Lismont's unjust enrichment claim was timely, which it is not, it is preempted by

federal patent law.  If a claim is based on conduct protected or governed by federal patent law,

then the state law claim is preempted because it conflicts with federal patent law.  *Powell v. The

Home Depot U.S.A., Inc.* 2010 WL 375796, *3 (S.D. Fla., Jan. 26, 2010).  Indeed, the Federal

Circuit has held that the "**field of federal patent law preempts any state law that purports to

define rights based on inventorship**." *Univ. of Colo. Found. v. Am. Cyndamid Co*., 196 F.3d

1366, 1372 (Fed. Cir. 1999) (emphasis added).[16]

For instance, in *Tavory v. NTP, Inc.,* 297 Fed. Appx. 976, 982, 2008 WL 4710761 (Fed.

Cir., Oct. 27, 2008), the plaintiff brought an action against the patent holder seeking to be joined

as an inventor on six patents and claimed unjust enrichment.  The plaintiff alleged that the

defendant "received substantial and valuable benefits . . . for the use of [his] wireless email

invention," and that it would be "inequitable and unjust for Defendant [] to retain the benefit of

the use of the [his] invention without payment . . . for the fair value of such use." *Id.* at 982.  The

---

[15] Even if this Court finds that the statute of limitations is not applicable here, Lismont's claim for unjust enrichment is also precluded by laches.  As discussed in Section IV above, Lismont's claim was not filed until 11 years after he was made aware of the United States patent application.  His delay is unjustified and prejudicial to Defendants.

[16] Federal Circuit law governs whether federal patent law preempts a state law claim.  *Ultra-Precision Mfg., Ltd. v. Ford Motor Co*., 411 F.3d 1369, 1376 (Fed. Cir. 2005).

Federal Circuit stated that it was clear from the face of the plaintiff's complaint that the allegations only concerned activities regarding the patents-in-suit. *Id.* The court thus dismissed the plaintiff's unjust enrichment claim, holding that it was preempted by 35 U.S.C. § 262. *Id.* at 983. The Court stated that the plaintiff could not "**sidestep § 262 through a state law unjust enrichment claim**." *Id.* at 983. (emphasis added). *See also GIV, LLC,* 2007 WL 1231443, *4 n. 6 ("The proper claim for the misappropriation of patented technology is patent infringement, not unjust enrichment. Unjust enrichment claims based on state law are generally preempted by federal patent law after the patent issues . . . ."); *Home Depot*, 2010 WL 375796 at *4 (court held that *Home Depot* could not circumvent federal patent law on co-inventorship by asserting state law counterclaims and thus dismissed Home Depot's unjust enrichment claim).

This is exactly the case here. It is clear from the face of Lismont's Complaint that his unjust enrichment claim is based on his contention that he is the sole inventor of the patent-in-suit. (Compl. ¶ 48.) This is a basic question of patent law. *See Vas-Cath, Inc.*, 745 F. Supp. at 527. ("Who is the inventor and who is copier is a staple question in any patent system.") Moreover, in his Complaint, Lismont seeks disgorgement of Defendants' profits. (Compl. ¶ 50-52, 58 ("It is unjust for defendants, jointly or individually, to retain all financial proceeds and other commercial benefits and advantages they derived.") This is a patent law remedy. *Home Depot*, 2010 WL 375796 at *4 (court held that disgorgement of profits was a remedy preempted by federal patent law.) Consequently, Lismont's common law unjust enrichment claim is preempted by federal patent law, and should be dismissed for this additional reason.

## CONCLUSION

For foregoing reasons, Lismont's Complaint should be dismissed in its entirety, under Federal Rules of Civil Procedure 12(b)(2) and (6).

24

Dated: January 30, 2013     /s/ Richard H. Ottinger
            Richard H. Ottinger
            Virginia State Bar #38842
            *Counsel for Defendants*
            rottinger@vanblk.com
            Vandeventer Black, LLP
            500 World Trade Center
            Norfolk, Virginia 23510-1699
            Telephone: (757) 446-8600
            Facsimile: (757) 446-8670

            Douglas A. Dozeman (P35781)
            Michigan Bar #P35781
            *Admitted Pro Hac Vice*
            ddozeman@wnj.com
            Warner Norcross and Judd LLP
            Grand Rapids, MI  49503
            616.752.2148

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Wednesday, January 30, 2013, I will I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of

Electronic Filing (NEF) to the following registered users:

Jeremy Mindlin Jay
Leydig Voit & Mayer, P.C.
700 13th St NW, Suite 300
Washington, DC 20005
Email: jjay@leydig.com

Stephanie Marie Lawley
Leydig Voit & Mayer, P.C.
700 13th St NW, Suite 300
Washington, DC 20005
Email: slawley@leydig.com

Brett Alan Hesterberg
Leydig Voit & Mayer Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Email: bhesterberg@leydig.com

Heinz Michael Hartmann
Leydig Voit & Mayer Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Email: mhartmann@laydig.com

Paul John Korniczky
Leydig Voit & Mayer Ltd.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601
Email: pkorniczky@leydig.com

<u>/s/ Richard H. Ottinger</u>

Richard H. Ottinger, Esquire
Virginia State Bar #38842
*Counsel for Defendants Alexander Binzel Corporation*
*Alexander Binzel Schweisstechnik GMBH & Co. KG*
*Abicor Unternehmensverwaltungs GMBH*
*IBG Industrie-Beteiligungs-GMBH & Co. KG, and Richard Sattler*
rottinger@vanblk.com
Vandeventer Black, LLP
500 World Trade Center
Norfolk, Virginia 23510-1699
(757) 446-8600
(757) 446-8670 – facsimile