UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HEDWIG LISMONT,

    Plaintiff,

v.                                            Civil Action No. 2:12cv592

ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK
GMBH & CO. KG,
ABICOR UNTERNEHMENSVERWALTUNGS GMBH,
IBG INDUSTRIE-BETEILIGUNGS-GMBH & CO.
KG, AND
RICHARD SATTLER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Alexander Binzel Corporation ("Binzel USA"), Alexander Binzel Schweisstechnik GmbH & Co. KG ("Binzel Germany"), Abicor Unternehmensverwaltungs GmbH ("Abicor"), IBG Industrie-Beteiligungs-GmbH & Co. KG ("IBG"), and Richard Sattler ("Sattler") (collectively, "Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The motion has been fully briefed and the Court heard oral argument on the motion on November 5, 2013. The matter is therefore ripe for decision. For the reasons set forth below, the Court **GRANTS IN PART** Defendants' motion to dismiss.

# I.  FACTUAL BACKGROUND

## A.  THE PARTIES

Hedwig Lismont ("Plaintiff") is a citizen of Belgium.  ECF No. 1 at ¶ 1.  IBG is a German corporation with a place of business in Germany.  _Id._ at ¶ 5.  Binzel Germany, a German corporation with a place of business in Germany, _id._ at ¶ 3, is wholly owned by IBG, _id._ at ¶ 10.  Abicor, a German corporation with the same place of business as Binzel Germany, _id._ at ¶ 4, is wholly owned by IBG and is an affiliate of Binzel Germany, _id._ at ¶¶ 10, 11.  Binzel USA, a Michigan corporation with a place of business in Frederick, Maryland, _id._ at ¶ 2, is wholly owned by Abicor and IBG, _id._ at ¶ 9.  Sattler is a citizen of Germany.  _Id._ at ¶ 6.

## B.  THE GERMAN PATENT

Plaintiff claims that, in 1995, he came up with the idea for "a new manufacturing process using . . . 'deep drilling' to make contact tips" for welding.  _Id._ at ¶ 15.  In 1996, Plaintiff was hired by Binzel Germany to help "develop or locate an alternative alloy material" to replace the expensive copper material then being used to make its welding contact tips.  _Id._ at ¶ 14.  Plaintiff claims that he suggested his deep-drilling idea to Binzel Germany in August 1996.  _Id._ at ¶ 16.  Because of Binzel Germany's skepticism regarding the use of deep drilling to make the contact tips, Plaintiff alleges that he entered into

2

a verbal agreement with Binzel Germany, specifying that he would be paid "an amount commensurate with the commercial benefits of [Plaintiff's] development results," but only if he was successful in actually reducing the manufacturing costs with the deep-drilling process. Id. at ¶ 18. Plaintiff contends that he and Binzel Germany agreed that Plaintiff's research and development would be confidential and that Binzel Germany would not use Plaintiff's developments without his permission. Id. at ¶ 19. Plaintiff claims he "reported his successful development" of the contact tips by deep drilling to Binzel Germany "in February and May 1997," through "confidential and proprietary reports." Id. at ¶ 20.

Plaintiff alleges that, in August 1997, Defendants IBG, Binzel Germany, and Sattler filed a German patent application "claiming [Plaintiff's] new deep-drilling manufacturing process" as their own and naming Sattler as the "sole inventor." Id. at ¶ 24. This application resulted in German patent DE 197 37 934 ("the German patent"). In 1998, Binzel Germany and Sattler "filed [a] PCT Application"[1] for the invention, again naming

---

[1] "The PCT provides for a unified procedure for filing a single patent application to protect an invention in all signatory countries. Under the PCT process, the applicant makes a single PCT filing administered by the World Intellectual Property Organization and then 'nationalizes' the PCT application in specific countries, typically undergoing a preliminary and local patent examination, country-specific grant procedures, and paying country-specific maintenance fees." Touchcom, Inc. v. Berreskin & Parr, 2010 U.S. Dist. LEXIS 12378, at *3 (E.D. Va. Feb. 12, 2010).

Sattler as the sole inventor.  <u>Id.</u> at ¶ 26.  The PCT application resulted in U.S. patent 6,429,406 ("the U.S. patent"), which issued on August 6, 2002, <u>id.</u> at ¶ 26, as well as patents in several other countries, including Germany.  Although Plaintiff contends that he "is the sole inventor of the subject matter disclosed and claimed in the [U.S.] patent and all related foreign patents and applications, . . . he is not identified as the inventor [on those patents and applications]."  <u>Id.</u> at ¶ 42. "[S]ince 1998," Plaintiff believes that Defendants "have made profits in excess of $143 million . . . from sales of deep-drilled contact tips worldwide."  <u>Id.</u> at ¶ 39.  Plaintiff asserts that "he has not received any financial proceeds or other commercial benefits or advantages commensurate with his deep-drilling research and development . . . pursuant to his understanding with the defendants."  <u>Id.</u> at ¶ 49.  As a result, Plaintiff alleges, "[D]efendants have been unjustly enriched and will continue to be unjustly enriched at [Plaintiff's] expense." <u>Id.</u> at ¶ 48.

## C. THE GERMAN LITIGATION

Plaintiff alleges that he filed two suits in Germany regarding the German patent.  In 2000, he filed suit seeking restitution of patent ownership.  In 2002, he filed a suit seeking disclosure and a declaratory judgment for damages.  <u>Id.</u> at ¶ 31.  Both of Plaintiff's actions in the German courts were

resolved against him.  Id.  Plaintiff alleges that he has also filed a complaint with the European Court for Human Rights, which "is still pending and could cause those two [previous] actions to be re-opened."  Id.

## II. PROCEDURAL HISTORY

On October 31, 2012, Plaintiff filed the Complaint in this case against Defendants, requesting correction of inventorship in the U.S. patent and related foreign patents (Count I) and alleging unjust enrichment (Count II) and patent infringement of the U.S. patent (Count III).  ECF No. 1.  On January 30, 2013, Defendants filed a motion to dismiss, supporting memorandum, and request for a hearing on the motion.  ECF Nos. 33-35.  Plaintiff filed a brief in opposition on February 27, 2013, after receiving an extension of time to file such response.  ECF No. 40.  Defendants filed a reply brief on March 11, 2013.  ECF No. 43.  Plaintiff filed a motion to strike Defendants' reply and to file a surreply, ECF No. 44, which was denied on June 6, 2013, ECF No. 47.  The Court heard oral argument on the motion to dismiss on November 5, 2013.

## III. DISCUSSION

Defendants assert that the Court lacks jurisdiction over "non-resident German Defendants IBG, Abicor, and Sattler" because they have not made "contacts of sufficient number or character to confer either general or specific jurisdiction over

them in Virginia," ECF No. 34 at 17, and because they are not "patentees" under 35 U.S.C. § 293, id. at 14. Defendants also request that the Court dismiss Counts I and III of Plaintiff's Complaint on the grounds of collateral estoppel and laches, and assert that Count II is time-barred by Virginia's statute of limitations or, alternatively, preempted by federal patent law.

## A. STANDARD OF REVIEW

According to the Federal Circuit, "[i]n reviewing district court judgments in patent cases, [the Federal Circuit] applies its own law on patent law issues, but with respect to nonpatent issues it generally applies the law of the circuit in which the district court sits." Phonometrics, Inc. v. Hospitality Franchise Sys., 203 F.3d 790, 793 (Fed. Cir. 2000).

### 1. Personal Jurisdiction – Rule 12(b)(2)

Federal Circuit law governs personal jurisdiction in patent cases because "the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). "Where a suit involves both patent and non-patent claims, Federal Circuit law . . . also applies to the question of personal jurisdiction on non-patent claims if 'the resolution of the patent . . . issue will be a significant factor' in determining liability under the non-patent claims."

6

_Breckenridge Pharm., Inc. v. Metabolite Labs., Inc._, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting _3D Sys., Inc. v. Aarotech Lab., Inc._, 160 F.3d 1373, 1377 (Fed. Cir. 1998)).  However, the Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process."  _3D Sys._, 160 F.3d at 1377.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of proof as to whether the defendant is subject to personal jurisdiction."  _Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico_, 563 F.3d 1285, 1294 (Fed. Cir. 2009).  Where the parties have not yet conducted discovery and the court does not conduct an evidentiary hearing, "the plaintiff need[s] 'only to make a prima facie showing' that the defendants [are] subject to personal jurisdiction."  _Silent Drive, Inc. v. Strong Indus., Inc._, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  The Court "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."  _Elecs. for Imaging, Inc. v. Coyle_, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  The burden of proof then "shifts to the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  _Breckenridge Pharm.,_

444 F.3d at 1362 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77, (1985)).

## 2. Failure to State a Claim – Rule 12(b)(6)

"Application of Rule 12(b)(6) in patent cases is a procedural question and is therefore governed by the law of the regional circuits." W.L. Gore & Assocs. v. Medtronic, Inc., 850 F. Supp. 2d 630, 632 (E.D. Va. 2012) (citing McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1355-56 (Fed. Cir. 2007)). "Therefore, this [C]ourt applies the rule of the [Fourth Circuit]." Polymer Indus. Prods. Co v. Bridgestone/Firestone, Inc., 347 F.3d 935, 937 (Fed. Cir. 2003); see also McZeal, 501 F.3d at 1356.

In considering a typical Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E. I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 448 (4th Cir. 2011) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). "[W]hen 'matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56,' and '[a]ll parties must be given a reasonable opportunity to present all the material that

8

is pertinent to the motion.'" Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27, 728 F.3d 354, 360 (4th Cir. 2013) (quoting Fed. R. Civ. P. 12(d)).

"[A] motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense," except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). In other words, a motion to dismiss pursuant to Rule 12(b)(6), based solely on an affirmative defense, may be considered only "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Id. (emphasis omitted) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." Id. at 466. Furthermore, "incorporation by reference is [not always] appropriate . . . [n]or should 'judicial notice' be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel S., 728 F.3d at 360 (citing, inter alia, Goodman, 494 F.3d at 464)

(considering a motion to dismiss as one for summary judgment where the court allowed the parties to "supplement the record" and where the parties neither requested discovery nor "object[ed] to the court's procedural management of the [defendant's] motion to dismiss").

## B. ANALYSIS

### 1. Personal Jurisdiction

Defendants concede that Binzel USA and Binzel Germany are subject to the jurisdiction of this Court, but assert that the Court lacks personal jurisdiction over "non-resident German Defendants IBG, Abicor, and Sattler" because they have not made "contacts of sufficient number or character to confer either general or specific jurisdiction over them in Virginia." ECF No. 34 at 17. Plaintiff disagrees, asserting that the "filing of the[] patent application in the U.S. Patent Office constitutes a 'purposeful act' that provides the 'minimum contacts' subjecting them to jurisdiction," both "under the federal long-arm statute, Fed. R. Civ. P. 4(k)(2), and the Virginia long-arm statu[t]e." ECF No. 40 at 8, 17. In addition, Plaintiff contends, the Court has personal jurisdiction over IBG and Sattler "under 35 U.S.C. § 293, since Mr. Sattler was the patentee . . . at the beginning of the application process that resulted in the [U.S.] patent." Id. at 17.

10

"'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 525 (E.D. Va. 2009) (citing BLACK'S LAW DICTIONARY 857 (7th ed. 1999)). "Federal district courts may exercise such personal jurisdiction 'only to the degree authorized by Congress under its constitutional power to ordain and establish the lower federal courts.'" Id. (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997)). There are two types of personal jurisdiction: general and specific. Synthes, 563 F.3d at 1297. "[A] forum does not have general jurisdiction over a defendant . . . unless the defendant has contacts with the forum . . . that qualify as 'continuous and systematic general business contacts.'" Campbell Pet Co. v. Miale, 542 F.3d 879, 883 (Fed. Cir. 2008) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citing Silent Drive, 326 F.3d at 1200). Indeed, "even a single act can support jurisdiction" if it "creates a 'substantial connection' with the forum." Burger King, 471 U.S. at 475 n.18.

11

Although Plaintiff fleetingly asserts that the Court has "general personal jurisdiction over [IBG, Abicor, and Sattler] under the federal long-arm statute . . . and the Virginia long-arm statu[t]e," ECF No. 40 at 17, his brief presents law regarding only specific jurisdiction, id. (reciting "the three-pronged approach" to "specific jurisdiction," articulated in Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403 (Fed. Cir. 2009)). Furthermore, Plaintiff's personal jurisdiction argument is based solely upon the "filing of [the U.S.] patent application." Id. at 8. To justify general jurisdiction, Defendants' contacts with Virginia or the United States must be "continuous and systematic," Helicopteros, 466 U.S. at 416, and the filing of one patent application in the United States is neither "continuous" nor "systematic," id. Thus, the Court considers only whether it has specific personal jurisdiction over IBG, Abicor, and Sattler.

### a. Virginia's Long-Arm Statute

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure." Touchcom, 574 F.3d at 1410 (citing Synthes, 563 F.3d at 1293). Under Rule 4(k)(1)(A), "a federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state." Id. In order for a district court to "exercise personal

jurisdiction over a non-consenting out-of-state defendant," two conditions must be satisfied. Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1368 (Fed. Cir. 2010). First, the exercise of jurisdiction must be authorized under the state's long-arm statute, and, second, "exercising jurisdiction over the defendant must comport with due process." Id. at 1368-69.

"Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric, Ltd., 561 F.3d 273, 277 (4th Cir. 2009). The constitutional "test for determining whether the exercise of jurisdiction comports with due process" is determined by the following "three-pronged approach" emanating from the Supreme Court's decision in International Shoe Co. v. Washington, 326 U.S. 310 (1945). Touchcom, 574 F.3d at 1411. "First, the defendant must have 'minimum contacts' with the forum state," which, in the "context of specific jurisdiction," means that "the defendant has 'purposefully directed his activities at residents of the forum.'" Id. (quoting Synthes, 563 F.3d at 1297). Second, the claim must "'arise[] out of or relate[] to the defendant's activities with the forum.'" Id. Third, the "'assertion of jurisdiction'" must be "'reasonable and fair.'" Id.

In this case, Plaintiff fails to prove that Defendants have established sufficient minimum contacts with Virginia.   As in Touchcom, the alleged contact with Virginia is "limited to the filing of a patent application at the USPTO [United States Patent and Trademark Office]."   Id. at 1412.   Plaintiff alleges no other contacts by any of the defendants with Virginia, besides the "communications with a federal agency that happens to be located in Virginia."   Id.   There is no allegation that IBG, Abicor, or Sattler has "travelled to Virginia" or "contributed to or benefited from Virginia's restaurants, hotels, airports, or other commercial establishments in its prosecution of the patent."   Id.   Nor does Plaintiff assert that either IBG, Abicor, or Sattler "directed any of their activities at issue in this case towards residents of Virginia," or "engaged in business negotiations with any Virginia residents." Id.   Although the filing of a patent application is a purposeful contact because it is "neither random nor fortuitous," it "do[es] not indicate a purposeful availment of the 'privilege of conducting business within' Virginia."   Id.   Because Plaintiff has failed to establish sufficient minimum contacts by Defendants with Virginia, the Court need not determine whether the remaining requirements of Rule 4(k)(1)(A) have been satisfied.   Accordingly, the Court declines to exercise personal

jurisdiction over IBG, Abicor, and Sattler under Virginia's long arm statute.

### b. Federal Long-Arm Statute

"Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes, 563 F.3d at 1295-96). In essence, Rule 4(k)(2) "approximates a federal long-arm statute," id. at 1294, and "establishes jurisdiction over a defendant when process has been served and three requirements are met: '(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process,'" Touchcom, 574 F.3d at 1410 (quoting Synthes, 563 F.3d at 1294).

### (1) "Arises Under Federal Law"

Pursuant to 28 U.S.C. § 1338(a), a federal district court has "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." "35 U.S.C. § 256 provides a private right of action to challenge inventorship, and such a challenge arises under § 1338(a)." HIF Bio, Inc. v.

<u>Yung Shin Pharms. Indus. Co.</u>, 600 F.3d 1347, 1354 (Fed. Cir. 2010); <u>see also</u> <u>Larson v. Correct Craft, Inc.</u>, 569 F.3d 1319, 1324-25 (Fed. Cir. 2009) (noting "[t]here is no doubt that § 256 supplies such a valid basis for federal jurisdiction"). Although Plaintiff asserts his unjust enrichment claim under state law, it is undisputed that his claim against all Defendants regarding correction of the U.S. patent, as well as his patent infringement claim against Binzel USA, "arises under federal law." <u>Touchcom</u>, 574 F.3d at 1410.

### (2) Not Subject to Jurisdiction in Any State

"Although the burden of establishing personal jurisdiction ordinarily falls on the plaintiff," the Federal Circuit has "adopted a burden-shifting mechanism" regarding the requirement of Rule 4(k)(2) "that the defendant must not be subject to personal jurisdiction in the courts of any state." <u>Merial</u>, 681 F.3d at 1294. Thus, "'if the defendant contends that he cannot be sued in the forum state and refuses to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2).'" <u>Id.</u> (quoting <u>Touchcom</u>, 574 F.3d at 1413).[2]

---

[2] The "burden-shifting mechanism" described in <u>Merial</u> departs from the approach taken by the Fourth Circuit, which places the burden on the plaintiff to "certify that the defendant is not subject to suit in the courts of general jurisdiction of any state." <u>Synthes</u>, 563 F.3d at 1294. The Federal Circuit has determined, however, that to place the burden upon the plaintiff "would saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over.'"

Defendants assert that they are not subject to personal jurisdiction in Virginia and they have not "identif[ied] any other [state] where suit is possible." <u>Merial</u>, 681 F.3d at 1294. Therefore, Plaintiff "has met [his] burden under Rule 4(k)(2) of demonstrating that [Defendants] are not subject to the jurisdiction of any state's courts of general jurisdiction." <u>Touchcom</u>, 574 F.3d at 1416.

### (3) "Comports with Due Process"

"[I]n deciding whether due process permits the exercise of personal jurisdiction under Rule 4(k)(2)," the court must determine "whether '(1) defendant has purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair.'" <u>Id.</u> at 1416 (quoting <u>Synthes</u>, 563 F.3d at 1297). "[T]he due process analysis under Rule 4(k)(2) . . . contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.'" <u>Id.</u> (quoting <u>Synthes</u>, 563 F.3d at 1295). Thus, "the test of specific jurisdiction under [Rule] 4(k)(2)" requires the Court to

---

<u>Merial</u>, 681 F.3d at 1294 (quoting <u>Touchcom</u>, 574 F.3d at 1413). Because we apply Federal Circuit law to all personal jurisdiction issues in patent cases, except for the issue of whether or not Virginia's long-arm statute "is intended to reach the limit of federal due process," <u>3D Sys.</u>, 160 F.3d at 1377, the Fourth Circuit's approach regarding Rule 4(k)(2) does not apply in this case.

consider Defendants' "'contacts with the nation as a whole.'" Id. (quoting Synthes, 563 F.3d at 1296).

### i. Purposefully Directed Activities at the United States

The Federal Circuit has determined that the filing of a patent application, although not sufficient to establish a minimum contact with the state of Virginia, is a "purposeful" activity directed at "parties in the United States," and is sufficient to establish "minimum contacts" with the United States and "satisfy due process." Id. The fact that a patent is obtained by means of an international PCT application "is irrelevant," because patent applicants are "required to submit documents to the USPTO to perfect the U.S. patent application and [] thus have had minimum contacts with the United States." Id. Accordingly, the filing of the U.S. patent application in this case qualifies as a "purposefully directed" activity toward, and a "minimum contact" with, the United States.

### (a) Who Purposefully Directed the Activity

Before proceeding to the second due process factor, it is necessary for the Court to determine which, if any, of the defendants may be subject to personal jurisdiction based upon the filing of the U.S. patent application. See Calder v. Jones, 465 U.S. 783, 790 (1984) (instructing that "[e]ach defendant's contacts with the forum . . . must be assessed individually").

**<u>Sattler</u>**

Plaintiff asserts that Sattler "authorized and/or instructed a U.S. patent attorney to prepare the patent application," "reviewed the draft(s)[,] and authorized filing [of the patent application] in the [USPTO]." ECF No. 40 at 18. Sattler also "prepared and authorized the filing of the "Declaration for Patent Application," as well as the assignment of rights to the patent, both of which were received and recorded by the USPTO. <u>Id.</u> at 18-19. Defendants respond that Sattler's involvement was limited to the "signing [of] the original inventor disclosure and assignment," both of which "were executed outside the United States." ECF No. 43 at 18. As discussed above, however, the "submi[ssion of] documents to the USPTO to perfect the U.S. patent application" is sufficient to establish minimum contacts with the United States, <u>Touchcom</u>, 574 F.3d at 1416, and the fact that Sattler "never physically entered the country in doing so is not determinative of minimum contacts," <u>id.</u> (citing <u>Burger King</u>, 471 U.S. at 476). Accordingly, Plaintiff has sufficiently "made a prima facie showing that [Sattler is] subject to personal jurisdiction," <u>Silent Drive</u>, 326 F.3d at 1201, which Defendants have failed to rebut.

**IBG**

Plaintiff attributes to IBG all of Sattler's actions surrounding the U.S. patent application, alleging that Sattler was "Managing Director/CEO" of IBG at the time. ECF No. 40 at 18. "Since the corporate personality is a fiction, . . . its 'presence' [in a forum] can be manifested only by activities carried on in its behalf by those who are authorized to act for it." Int'l Shoe, 326 U.S. at 316 (citation omitted). Therefore, if "contacts made by the agents and employees of [a] corporation are sufficient to justify the exercise of jurisdiction," those contacts "will be attributed to the corporation for jurisdictional purposes, so long as the acts were within the course and scope of the agency or employment." 16 Moore's Federal Practice § 108.42[3][b][ii] (Matthew Bender 3d Ed.).

Plaintiff contends that Sattler and IBG ("acting through Mr. Sattler," Managing Director/CEO), "'actively' participate[d] in the prosecution of the [U.S.] patent," because "IBG, through Mr. Sattler, authorized and/or instructed a U.S. patent attorney to prepare the patent application," "reviewed the draft(s) and authorized filing in the U.S. Patent Office," and "made the decision" to file the patent application "in the name of only Mr. Sattler." ECF No. 40 at 18, 19-20. In response, Defendants assert merely that the signing of "the inventor

20

disclosure and assignment in the [U.S.] Patent application . . . is not a sufficient basis for jurisdiction" and summarily allege that IBG and Abicor had no "connection to the [U.S.] patent." ECF No. 43 at 17.   This unsupported conclusion by Defendants hardly qualifies as a "'compelling case'" showing "'considerations [that] would render jurisdiction unreasonable.'" Breckenridge Pharm., 444 F.3d at 1362 (quoting Burger King, 471 U.S. at 476-77).   Therefore, IBG's active participation "in the prosecution of the [U.S.] patent" through its agent, Sattler, qualifies as a sufficient minimum contact with the United States and Defendants have failed to successfully rebut Plaintiff's prima facie showing.

### Abicor

Plaintiff's brief also attributes Sattler's actions to Abicor, alleging that Sattler was "Managing Director/CEO of Abicor during at least 2006 and 2007" and asserting that Abicor is "wholly owned by IBG," is "an affiliate of Binzel Germany (the [U.S.] patent owner)," and is the parent corporation of Binzel USA.   ECF No. 40 at 20.   Plaintiff contends that it is therefore "reasonable to infer that Abicor, acting through . . . Sattler, exercised decision-making and control over at least Binzel Germany in connection with . . . the patent application . . . [which] subjected [Abicor] to the personal jurisdiction of this Court." Id. at 21.

Even "accept[ing] the uncontroverted allegations in the plaintiff's complaint as true and resolv[ing] any factual conflicts . . . in the plaintiff's favor," Elecs. for Imaging, 340 F.3d at 1349, Plaintiff fails to make a sufficient "prima facie showing" of personal jurisdiction as to Abicor, Silent Drive, 326 F.3d at 1201. First, the Court notes that the contacts of a parent corporation and a subsidiary may sometimes be attributed to one another, but "[o]nly when the parent corporation has sufficient control over the subsidiary, or when the appearance of separateness is actually a sham." Moore, supra, at § 108.42[3][b][iv]; see also Burger King, 471 U.S. at 475 (observing that the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person"). Plaintiff posits merely that it is "reasonable to infer" Abicor's "decision-making and control" over Binzel Germany, ECF No. 40 at 20, but makes no assertion of actual control by Abicor over Binzel Germany or the extent of Abicor's relationship with its parent corporation, IBG. Second, Plaintiff's Complaint makes no mention of Sattler's Managing Director/CEO role at Abicor. Although he asserts in his sworn declaration that, "At this time, I believe, upon information and belief that Mr. Sattler was acting as the Managing Director/CEO

22

of Abicor and IBG," ECF No. 40, Ex. 2, at ¶ 9, he alleges no active participation by Abicor in relation to the application for the U.S. patent. Plaintiff's unsupported allegation, that Sattler's actions "as an officer of Abicor are attributable to Abicor," ECF No. 40 at 20, is insufficient to demonstrate that Abicor actively participated in the application for the U.S. patent. Plaintiff has therefore failed to establish a "prima facie showing" of personal jurisdiction as to Abicor, and Defendants have no burden to prove otherwise. Having found no activities by Abicor purposefully directed at the United States regarding the filing of the U.S. patent application, the Court must now continue its analysis of the due process factors applicable to Rule 4(k)(2) in order to determine whether specific personal jurisdiction exists over IBG and Sattler under the federal long-arm statute.

### ii. "Arises Out Of" or "Relates To" Activities With the United States

"'Although the nexus necessary to satisfy the "arise out of or related to" requirement of the due process inquiry has not been clearly delineated by the Supreme Court,'" the Federal Circuit has "'stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure "arise out of" standard.'"

Avocent, 552 F.3d at 1330 (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1362 (Fed. Cir. 2001)); see also Helicopteros, 466 U.S. at 415 n.10 (declining to address whether there should be a "distinction between controversies that 'relate to' a defendant's contacts with a forum and those that 'arise out of' such contacts").

It is undisputed that all of Plaintiff's claims arise from, and relate to, the filing of the U.S. patent application, which named Sattler as the sole inventor instead of Plaintiff.  Thus, IBG's and Sattler's "contacts arise out of activities within the United States that form the basis for the litigation in this case." Touchcom, 574 F.3d at 1417.

### iii. "Reasonable and Fair"

In determining whether the exercise of jurisdiction is reasonable and fair, the Court must consider five factors: "(1) the burden on the defendant[s], (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." Id. (citing Burger King, 471 U.S. at 477).

Although IBG and Sattler would likely be burdened by having to travel to the United States to defend themselves against

24

Plaintiff's claims, the "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." Synthes, 563 F.3d at 1299 (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 294 (1980)). Additionally, the United States has a "substantial interest" in enforcing its federal patent laws and discouraging "injuries resulting from" the violation of those laws. Id. It also appears that Plaintiff has properly "allege[d] an injury for which [he] has an interest in obtaining relief." Id. at 1300. The fourth and fifth "interstate" factors, "to the extent that [they] apply when the United States is the forum," probably "favor jurisdiction in this case." Id. Because "U.S. patent law will be required" to adjudicate Plaintiff's claims, "the United States does not appear to be any less efficient a forum in which to adjudicate this dispute." Touchcom, 574 F.3d at 1418. Moreover, no evidence suggests that exercising personal jurisdiction over IBG and Sattler would have a detrimental effect on the United States' "foreign relations policies" with Germany. Synthes, 563 F.3d at 1300. Accordingly, the Court declines to exercise personal jurisdiction over Abicor under Rule 4(k)(2), but finds that the federal long-arm statute gives this Court personal jurisdiction over Defendants IBG and Sattler.

### c. Patent Long-Arm Statute

35 U.S.C. § 293 "operates as a special 'long-arm' statute, providing jurisdiction over a United States patentee who does not reside within the United States and who has not made a designation of a resident agent on whom process may be served." 8 Donald S. Chisum, Chisum on Patents § 21.02 (Matthew Bender). The statute was "designed to assure a forum for suit in the United States in cases that otherwise might not be accommodated by either state or federal courts." Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd., 877 F.2d 1003, 1006-07 (D.C. Cir. 1989) (citation omitted). "The plain language of § 293 limits the exercise of personal jurisdiction to a foreign 'patentee.'" Int'l Mfg. & Eng'g Servs. Co. v. Semiconductor Energy Lab. Co., No. 06-1230, 2007 U.S. Dist. LEXIS 50813, at *9 (D.D.C. July 16, 2007) (granting motion to dismiss for lack of jurisdiction because patent applicant was not a "patentee"). "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successor in title to the patentee." 35 U.S.C. § 100(d).

Plaintiff asserted in his brief that this Court could exercise personal jurisdiction over IBG and Sattler under 35 U.S.C. § 293 because "Sattler was the patentee (i.e., the sole applicant) at the beginning of the application process that

resulted in the [U.S.] patent." ECF No. 40 at 17. At oral argument, however, Plaintiff abandoned this argument:

> THE COURT: Back to this issue of Mr. Sattler's status. Under 35 USC 100(d), the definition of patentee for 293 purposes, even though he's assigned his rights to Binzel in the manner in which you described it to me, . . . you define him as a patentee? You think he's defined as a patentee?
>
> MR. HARTMANN: No. We don't -- not any more. Not any more. When he assigned the ownership rights to Binzel, to one of the Binzel companies, he is technically not a patentee.

Tr. of Oral Arg. at 50 (Mot. to Dismiss Nov. 5, 2013). Even if Sattler might have been a patentee during the "months of pendency of the application . . . before the assignment was filed," Plaintiff's counsel stated, "I don't think that makes any difference to our case." Id. at 50, 51. Therefore, this Court need not determine whether Sattler is "the patentee to whom the patent was issued" under 35 U.S.C. § 100(d). Moreover, it appears that the only "successor in title to the patentee," 35 U.S.C. § 100(d), is Binzel Germany, according to the assignment document submitted by Plaintiff, see ECF No. 34, Ex. 9, and Plaintiff does not argue otherwise.[3] Thus, in summary, this Court declines to exercise personal jurisdiction over IBG,

---

[3] The whole of Plaintiff's § 293 argument appears to be that the "same contacts [with the U.S. Patent Office] by Mr. Sattler and IBG provide this Court with personal jurisdiction under 35 U.S.C. § 293." ECF No. 40 at 17. Plaintiff's concession that Sattler is not a "patentee" necessarily precludes his argument that IBG, through Sattler, is also a "patentee."

Abicor, and Sattler under Virginia's long-arm statute or 35 U.S.C. § 293, but finds that it may properly exercise personal jurisdiction over Defendants IBG and Sattler under Rule 4(k)(2).

## 2. Affirmative Defenses

### a. Collateral Estoppel/Issue Preclusion

Defendants assert that Counts I and III of Plaintiff's Complaint "are precluded by the doctrine of collateral estoppel," ECF No. 34 at 6, because a "German court concluded that [Plaintiff] was not the sole inventor or the co-inventor" of the patent's subject matter, id. at 20.[4]

The doctrine of collateral estoppel, also known as issue preclusion, "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004) (quoting Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998). To prevail on an issue preclusion claim, a claimant must establish that:

---

[4] It is not clear why Defendants argue that Count III, a patent infringement claim, is "precluded by the doctrine of collateral estoppel." ECF No. 34 at 6. The issue before the German courts, according to Plaintiff's Complaint, was an "action for restitution of patent ownership for [the] German patent," ECF No. 1 at ¶ 31, and it does not otherwise appear from the record that a claim for patent infringement was ever advanced in the German court.

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

Sedlack, 134 F.3d at 224.  "The burden is on the party asserting collateral estoppel to establish its predicates, and this of course includes presenting an adequate record for the purpose." Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982).

Here, Plaintiff's Complaint does not allege facts sufficient to address the merits of Defendants' affirmative defense of collateral estoppel. For example, the Complaint, on its face, does not clearly show that Plaintiff's "action for restitution of patent ownership for [the] German patent," ECF No. 1 at ¶ 31, is the same issue as "correction of inventorship in the [U.S.] patent and the related foreign patents," id. at 11 (capitalization omitted). Defendants argue that Plaintiff's correction of inventorship claim before this Court "is precisely the issue [Plaintiff] raised in the German courts," ECF No. 34 at 22, and urge this Court to "take judicial notice of the German pleadings and other public records, especially since [Plaintiff] has referenced the German opinions in his Complaint," id. at 8 n.1. However, even if those documents were

determinative of whether the issues are "identical," neither they nor the Complaint appear to resolve other issues regarding whether collateral estoppel should apply in this case.   For instance, Plaintiff's Complaint suggests that his current action filed with the European Court of Human Rights "could cause [his German patent] actions to be re-opened."  ECF No. 1 at ¶ 31.   In response, Defendants argue that the German court's decision "is final and unappealable," ECF No. 34 at 12 n.9, based upon a Declaration by German attorney Jens Petry, who explained that Plaintiff's complaint with the European Court of Human Rights "is not an appeal of the German Supreme Court's decision," but, instead, is "an independent action, in which [Plaintiff] claims that he was not given basic due process, in violation of his constitutional resp. human rights," ECF No. 34, Ex. 6, at ¶ 11. Defendants also argue that Plaintiff had "a full and fair opportunity to litigate," ECF No. 43 at 7, based upon a second Declaration by Mr. Petry, who described Plaintiff's right in the German litigation to have counsel, submit evidence, call witnesses, and cross-examine opposing witnesses, ECF No. 43, Ex. 2, at ¶ 9.   Accordingly, because Plaintiff's Complaint, on its face, does not allege "facts sufficient to rule on [the] affirmative defense" of collateral estoppel, Goodman, 494 F.3d at 464, the Court declines to dismiss Counts I and III of

Plaintiff's Complaint based upon the affirmative defense of collateral estoppel.

### b. Laches

Defendants allege that Counts I and III of Plaintiff's Complaint, requesting correction of inventorship in the U.S. patent and alleging patent infringement, are "barred by the doctrine of laches." ECF No. 34 at 23.

"Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay." Advanced Cardiovascular Sys. v. SciMed Life Sys., 988 F.2d 1157, 1161 (Fed. Cir. 1993). "'[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches.'" Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008) (quoting Advanced Cardiovascular Sys., 988 F.2d at 1163). However, the Federal Circuit has observed that the "mere lapse of time does not constitute laches." Advanced Cardiovascular Sys., 988 F.2d at 1163 (quoting Leimer v. State Mutual Life Assurance Co., 108 F.2d 302, 305, (8th Cir. 1940)). Rather, the "defense of laches usually requires factual development beyond the content of the complaint," such as evidence regarding the "unreasonableness of the delay, lack of excuse, and material prejudice to the

defendant." Id. at 1161. In other words, "a presumption will not support judgment on the pleading under Rule 12(b)(6)." Id. at 1163.

Plaintiff's Complaint alleges that he was "not identified as the inventor" on the U.S. patent, "which issued on August 6, 2002." ECF No. 1 at ¶¶ 42, 26. Plaintiff's Complaint, however, does not establish when he "knew or should have known of the issuance of the patent," Serdarevic, 532 F.3d at 1358, and this Court may not "measure [Plaintiff's] delay from the date of issuance of the patent, in absence of proof that [Plaintiff] knew or should have known that the patent had issued and that he was omitted as [the] . . . inventor," Advanced Cardiovascular Sys., 988 F.2d at 1162. Furthermore, this Court declines to consider Defendants' assertion that "there is no question that [Plaintiff] was aware of the [U.S.] patent application as early as February 2001," ECF No. 34 at 25, because it relies on evidence "outside the pleadings," Waugh Chapel S., 728 F.3d at 360.

In any event, even if the Court were to determine that more than six years have passed since Plaintiff, "the omitted inventor[,] knew or should have known of the issuance of the patent," only a "rebuttable presumption of laches" would exist. Serdarevic, 532 F.3d at 1358 (observing that the presumption of laches may be rebutted by evidence showing "'an excuse for the

32

delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue'" (quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1038 (Fed. Cir. 1992))). Because Plaintiff's Complaint contains no facts regarding the excuses for Plaintiff's delay or any material prejudice to Defendants, and because the facts surrounding Plaintiff's claims "can not be decided against [him] based solely on presumptions," Advanced Cardiovascular Sys., 988 F.2d at 1161, the Court declines to dismiss Counts I and III of Plaintiff's Complaint based upon the affirmative defense of laches.

### c. Statute of Limitations

Defendants allege that Count II of Plaintiff's Complaint alleging unjust enrichment "is barred by the applicable statute of limitations or, in the alternative, preempted by federal patent law." ECF No. 34 at 27.

Because unjust enrichment is a "nonpatent issue," this Court "applies the law of the [Fourth] [C]ircuit." Phonometrics, 203 F.3d at 793. The Fourth Circuit has held that, "[a]lthough a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the

33

complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). Therefore, the "raising of the statute of limitations as a bar to [a] cause of action . . . may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint." Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005); see also Pressley v. Tupperware Long Term Disability Plan, 553 F.3d 334, 336 (4th Cir. 2009) ("[W]here facts sufficient to rule on an affirmative defense - including the defense that the plaintiff's claim is time-barred - are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." (citation and internal quotation marks omitted)).

"In Virginia, the statute of limitations for an unjust enrichment claim is three years." East West, LLC v. Rahman, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012) (citing Belcher v. Kirkwood, 383 S.E.2d 729, 731 (Va. 1989)). "'The statute of limitations for unjust enrichment begins to run at the time the unjust enrichment occurred . . . not when a party knew or should have known of the unjust enrichment.'" Id. (internal quotation marks omitted) (quoting Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 576 (E.D. Va. 2004)). The unjust enrichment begins to accrue at "the moment the expected compensation is not paid." Id. (citing

<u>Primrose Dev. Corp. v. Benchmark Acquisition Fund I, L.P.</u>, 47 Va. Cir. 296, 298, 1998 Va. Cir. LEXIS 319, at *5 (Va. Cir. Ct. 1998); <u>see also</u> <u>Seale & Assocs. v. Vector Aero. Corp.</u>, No. 1:10-cv-1093, 2010 U.S. Dist. LEXIS 129748, at *11 (E.D. Va. Dec. 7, 2010) (same).

Plaintiff asserts in his Complaint that Defendants' "wrongful acts and/or omissions, including their intentional failure to identify [Plaintiff] as the sole inventor" resulted in the alleged unjust enrichment. ECF No. 1 at ¶ 48. Plaintiff alleges that he and Binzel Germany privately agreed in October 1996 that Binzel Germany would pay Plaintiff "an amount commensurate with the commercial benefits of [Plaintiff's] development results." <u>Id.</u> at ¶ 18. Plaintiff contends that he "reported his successful development results" to Binzel Germany "in February and May 1997." <u>Id.</u> at ¶ 20. Since 1998, Plaintiff asserts, Defendants "have made profits in excess of $143 million . . . from sales of deep-drilled contact tips." <u>Id.</u> at ¶ 39. Plaintiff further claims that he "has not received any financial proceeds or other commercial benefits or advantages commensurate with his deep-drilling research and development." <u>Id.</u> at ¶ 49. Thus, under the allegations of Plaintiff's Complaint, he should have received payment "since 1998." <u>Id.</u> at ¶ 39. Plaintiff alleged his unjust enrichment claim on October 31, 2012, more

than three years after 1998.[5]   Accordingly, finding "facts sufficient to rule on [Defendants'] affirmative defense" of Virginia's three-year statute of limitations regarding an unjust enrichment claim, the Court finds that Count II of Plaintiff's Complaint is time-barred under Virginia law.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), is **GRANTED IN PART**.  Defendants' motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), is also **GRANTED IN PART**.  Specifically, Abicor is **DISMISSED** as a defendant in this case because the Court lacks personal jurisdiction over it, and Count II of Plaintiff's Complaint, alleging unjust enrichment under Virginia law, is **DISMISSED** as to all defendants because it is barred by the Virginia statute of limitations.

---

[5] Even if the unjust enrichment claim did not begin to accrue until the U.S. patent issued with Sattler named as the sole inventor, more than three years have passed since the U.S. patent issued on August 6, 2002.  <u>See</u> ECF No. 1 at ¶ 26.

[6] Because the Court finds Plaintiff's claim is time-barred by Virginia's statute of limitations, it declines to consider Defendants' alternative argument that Plaintiff's unjust enrichment claim is preempted by federal patent law.

The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**


_____
/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
November 18 , 2013