

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HEDWIG LISMONT,

    Plaintiff,

v.                                   Civil Action No. 2:12cv592

ALEXANDER BINZEL CORPORATION,
ALEXANDER BINZEL SCHWEISSTECHNIK
GMBH & CO. KG,
IBG INDUSTRIE-BETEILIGUNGS-GMBH & CO.
KG, AND
RICHARD SATTLER,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Alexander Binzel Corporation ("Binzel USA"), Alexander Binzel Schweisstechnik GmbH & Co. KG ("Binzel Germany"), IBG Industrie-Beteiligungs-GmbH & Co. KG ("IBG"), and Richard Sattler ("Sattler") (collectively, "Defendants"). ECF No. 66. For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The extensive factual background in this case is detailed in the previous orders issued by this Court. ECF Nos. 51, 79. For the purposes of the instant motion for summary judgment,

where only Defendants' affirmative defense of laches is at issue, the Court will briefly recite the relevant facts.

In 1997, Binzel Germany filed a German patent application for a method of using a deep drilling process to produce contact tips for welding or cutting torches. The German patent, which issued on December 10, 1998, identified Binzel Germany as the applicant and owner of the patent, and identified Sattler as the inventor. In August of 1998, Binzel Germany filed an international PCT application, which resulted in several patents, including United States Patent No. 6,429,406 ("the U.S. patent") issued on August 6, 2002. The U.S. patent listed Sattler as the inventor of contact tips produced by deep drilling.

Hedwig Lismont ("Plaintiff") sued Binzel Germany in October of 2000 in Germany, alleging that he, not Sattler, was the true inventor of the contact tips. In 2002, Plaintiff initiated a second action in Germany, seeking damages related to his inventorship claim. The parties vigorously litigated the inventorship issue in Germany for nine years, until Plaintiff's final appeal was rejected on November 25, 2009. Plaintiff subsequently filed an action with the European Court of Human Rights, "alleging that the German courts violated his right to a full and fair trial under Article 6 of the European Convention for Human Rights." Spross Decl. ¶ 14, ECF No. 71-1 at 24. On

2

October 31, 2012, nearly three years after Plaintiff's final appeal was rejected by the German court, Plaintiff filed a Complaint in this Court, alleging that he is the "sole inventor of the subject matter disclosed and claimed in the [U.S.] patent." Compl. ¶ 41, ECF No. 1. In addition, "[u]pon correction of the inventorship requested in [the Complaint]," Plaintiff alleges infringement by Binzel USA. Id. ¶ 60.

Defendants filed a Motion to Dismiss, alleging, inter alia, that Plaintiff's claims "are precluded by the doctrine of collateral estoppel" and "the doctrine of laches." Defs.' Br. Supp. Mot. to Dismiss at 6-7, ECF No. 34. On November 5, 2013, the Court held a hearing on Defendants' motion and, on November 18, 2013, issued a Memorandum Opinion and Order denying Defendants' motion to dismiss on the grounds of collateral estoppel and laches because the merits of such affirmative defenses could not be determined from the face of Plaintiff's Complaint. ECF No. 51.

Defendants filed their Motion for Summary Judgment on February 7, 2014, alleging that Plaintiff's claims are barred by the doctrine of collateral estoppel and the doctrine of laches. ECF No. 66. Plaintiff filed his responsive brief on February 21, 2014, ECF No. 71, asserting that "genuine issues of material fact exist" and that Plaintiff is "entitled to discovery" because Defendants' affirmative defenses raise "numerous

3

contested factual issues." ECF No. 71 at 3. Defendants filed their reply brief on February 27, 2014. ECF No. 72. On March 12, 2014, the Court entered an Order, observing that Defendants' Motion for Summary Judgment "is potentially dispositive on the issues of both collateral estoppel and laches." ECF No. 79 at 9. Recognizing that discovery for both defenses may not be necessary, the Court granted a limited discovery period and ordered Defendants to respond to certain of Plaintiff's interrogatory requests and requests for production, so that the Court could properly consider Defendants' affirmative defense of laches. The Court noted that, if Defendants' laches defense failed to resolve the motion for summary judgment, the Court would then determine "whether additional discovery is necessary" regarding "Defendants' affirmative defense of collateral estoppel." Id. at 9 n.2. On April 15, 2014, Plaintiff filed his supplemental summary judgment brief, addressing Defendants' laches defense. ECF No. 104. Defendants filed their supplemental reply brief on April 29, 2014. ECF No. 110. Accordingly, Defendants' Motion for Summary Judgment is ripe for review.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986). If the pleadings, affidavits, deposition transcripts, and other discovery materials demonstrate that there is no genuine dispute as to a material fact, "it is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" Hostettler v. Auto-Owners Ins. Co., 744 F. Supp. 2d 543, 545 (E.D. Va. 2010) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party,

5

and the judge may not make credibility determinations. Id. at 255; T-Mobile Ne. LLC v. City Council of Newport News, 674 F.3d 380, 385 (4th Cir. 2012). After viewing the evidence in the non-movant's favor, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." Anderson, 477 U.S. at 252. Because a ruling on summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits[,] . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to overcome a defendant's well-founded summary judgment motion. Id. Accordingly, if the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

### III. DISCUSSION

Defendants argue that Plaintiff's claims are "barred by the doctrine of laches" because Plaintiff filed this action "more than ten years after the [U.S.] Patent issued, and more than ten years after [Plaintiff] knew or should have known of the issuance." Defs.' Br. Supp. Mot. for Summ. J. at 13, ECF No. 67. Defendants allege that Plaintiff's "delay is manifestly unreasonable and unquestionably prejudiced Defendants." Id.

6

Plaintiff disagrees, arguing that "Defendants' laches defense must be dismissed" because Plaintiff's delay in filing "the U.S. litigation . . . was neither unreasonable nor inexcusable" and because "Defendants have not, and cannot, show material evidentiary [or economic] prejudice." Pl.'s Suppl. Br. in Opp'n at 11, ECF No. 104.

A defendant may invoke the laches defense by proving that (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant" and (2) "the delay operated to the prejudice or injury of the defendant." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). In determining whether to apply the laches defense, the "court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties." Id.

"[A] delay [in filing suit] of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993); see also Pei-Herng Hor v. Ching-Wu Chu, 699 F.3d 1331, 1334 (Fed. Cir. 2012) ("For inventorship claims under § 256, a delay of six years after a claim accrues creates a rebuttable presumption of laches."

(citing Advanced Cardiovascular, 988 F.2d at 1163)); Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008). Once the presumption of laches has attached, the "burden of production" shifts to the plaintiff, who "can rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Serdarevic, 532 F.3d at 1359-60 (quoting Aukerman, 960 F.2d at 1038). To rebut the presumption that a delay is unreasonable and inexcusable, the plaintiff "bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of [his] conduct." Aukerman, 960 F.2d at 1039. If the plaintiff introduces "evidence sufficient to raise a genuine dispute as to either delay or prejudice," the defendant is "put to its proof on both factors" and "must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice resulting from that delay." Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1293 (Fed. Cir. 1992) (citing Aukerman, 960 F.2d at 1032, 1037-38). However, if the plaintiff fails "to come forward with either affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in filing suit, the two facts of unreasonable delay and prejudice 'must be inferred.'" Hall v.

8

<u>Aqua Queen Mfg., Inc.</u>, 93 F.3d 1548, 1553-54 (Fed. Cir. 1996) (quoting <u>Aukerman</u>, 960 F.2d at 1038).

Of course, "the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not mandate recognition of a laches defense in every case." <u>Aukerman</u>, 960 F.2d at 1036. "Those factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied." <u>Id.</u> Furthermore, "[i]f the decision on laches is made on summary judgment, there must [exist] no genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered." <u>Id.</u> at 1039.

## A. Presumption of Laches

In its March 12, 2014 Order, the Court noted that "Defendants appear to have established a rebuttable presumption of laches" because Plaintiff, charged with the knowledge of the U.S. patent's issuance in 2002, did not file suit in this Court until "more than a decade later." Court's Order at 11, ECF No. 79. It is undisputed that Plaintiff knew of the United States patent application no later than February 12, 2001, when Plaintiff asserted to the German court that "the witness Sattler has applied for the patent that is in dispute here in the United

9

States in his own name as inventor." Defs.' Exh. I at 23, ECF No. 67-9.    However, because a "claim for correction of inventorship does not accrue until the patent issues," the "laches clock did not start to run - at the earliest - until the patent issued." Pei-Herng Hor, 699 F.3d at 1335 (citing Aukerman, 960 F.2d at 1032).

The patent issued on August 6, 2002, and Plaintiff filed suit in this Court on October 31, 2012.    Plaintiff does not argue that the presumption of laches should not attach, either because the period of delay was less than six years or because he had no reason to know of his "claim against the defendant." Aukerman, 960 F.2d at 1032.    Nor could he.    Having known of the United States patent application no later than February 12, 2001, Plaintiff was charged with the duty to "'be diligent and make such inquiry and investigation as the circumstances reasonably suggest.'" Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1338 (Fed. Cir. 1998) (quoting Potash Co. of Am. v. Int'l Minerals & Chem. Corp., 213 F.2d 153, 155 (10th Cir. 1954)). Thus, Plaintiff is charged with the knowledge that the patent issued on August 6, 2002.    Moreover, Plaintiff does not dispute Defendants' assertion that Plaintiff "clearly was aware, or should have been aware, of the issuance of the [U.S.] Patent" on August 6, 2002.    Defs.' Br. Supp. Mot. for Summ. J. at 14, ECF No. 67.    Because Plaintiff filed suit in this Court "more than

six years after [he] knew or should have known of the issuance of the patent," the Court determines that the "rebuttable presumption of laches" has attached. <u>Advanced Cardiovascular</u>, 988 F.2d at 1163. Accordingly, the Court next considers whether Plaintiff "can rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable.'" <u>Serdarevic</u>, 532 F.3d at 1359-60 (quoting <u>Aukerman</u>, 960 F.2d at 1038).

## B. Reasonableness of Plaintiff's Delay

Plaintiff advances three reasons supporting his argument that his delay in filing this suit was reasonable: (1) his "German litigations which ended in September 2013," (2) "the parties' settlement negotiations between July and September 2012," and (3) "[Plaintiff's] repeated warnings about the U.S. patent." Pl.'s Suppl. Br. in Opp'n at 12, ECF No. 104. The Court therefore considers each of Plaintiff's reasons to determine whether Plaintiff presents "sufficient evidence to raise a genuine factual issue respecting the reasonableness of [his] conduct." <u>Aukerman</u>, 960 F.2d at 1039.

### 1. Other Litigation and Notice to Defendants

Because Plaintiff's first and third reasons raise related issues, the Court considers them together. Plaintiff alleges that "delaying the U.S. action until October 2012" was reasonable because he was involved in "two German litigations

11

against Defendants, which were not final until the European Court of Human Rights' (ECHR) decision in September 2013"[1] and because he "gave adequate and repeated notice" to Defendants of his intent to challenge the U.S. patent. Pl.'s Suppl. Br. in Opp'n at 13-14, ECF No.104. Defendants argue that Plaintiff's "other litigation" excuse does not excuse his delay because "Plaintiff failed to give Defendants notice of his intent to bring a separate action in the United States." Defs.' Suppl. Reply Br. at 7, ECF No. 110.

"A patent holder may avoid the consequences of what would otherwise be an unreasonable delay in filing suit by establishing that he or she was engaged in 'other litigation.'" Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 876-77 (Fed. Cir. 1991) (citing Watkins v. Nw. Ohio Tractor Pullers Ass'n, 630 F.2d 1155, 1162 (6th Cir. 1980)). "The 'other litigation' excuse normally applies when a patentee defers suit against an alleged infringer until the conclusion of another lawsuit. If the party is ultimately sued and had received proper notice, the time delay consumed by the original

---

[1] Defendants assert that the "final judgment of the German court was entered in 2009," when the German Supreme Court rejected Plaintiff's appeal, not in 2013 when "the European Court of Human Rights ('ECHR') dismissed [Plaintiff's] petition." Defs.' Suppl. Br. Supp. Summ. J. at 20 n.11, ECF No. 110. Defendants assert that "the ECHR action was a separate action, with different parties," id., "in which [Plaintiff] claims he was not given basic due process, in violation of his constitutional . . . human rights," Jan. 30, 2013 Petry Decl. ¶ 11, ECF No. 67-6.

12

proceeding may be excused in evaluating whether laches occurred." Id. at 877. However, "[f]or other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer . . . inform[ing] the alleged infringer of the patentee's intention to enforce its patent upon completion of that proceeding." Id. (citing Hottel Corp. v. Seaman Corp., 833 F.2d 1570, 1573 (Fed. Cir. 1987)).

Although there is "no rigid requirement" that the patentee himself provide "notice of such litigation and of its intention to sue [the alleged infringer] upon its conclusion," "where there is prior contact [between the parties], the overall equities may require appropriate notice." Aukerman, 960 F.2d at 1039; see also Hall, 93 F.3d at 1554 (affirming "district court's conclusion that notice of an intent to sue after the [other] litigation was required" where there had been "'prior contact [between the patentee and the accused infringer]'" (quoting Aukerman, 960 F.2d at 1039)). "To establish whether such notice was given, the district court must look not only at the actions of the patentee, but also at evidence showing whether the alleged infringer was in fact on notice of an existing lawsuit." Vaupel 944 F.2d at 877. However, "[w]hat is important is whether [defendant] had reason to believe it was likely to be sued." Id. at 878.

### a. The February 12, 2001 German Pleading

Plaintiff asserts that he "'expressly reserved' the right to pursue his U.S. patent rights" in a February 12, 2001 pleading submitted to the German court, and contends that he "never indicated or implied that he was abandoning his interest in the U.S. patent." Pl.'s Suppl. Br. in Opp'n at 15, ECF No. 104. Defendants argue that Plaintiff's 2001 pleading merely reserved the right to "amend[] his German pleadings," which Plaintiff did amend "to include damages related to the U.S. patent" Defs.' Suppl. Reply Br. at 8, ECF No. 110. Thus, Defendants contend that "it was reasonable for Defendants to assume the inventorship issue, in its entirety, was being addressed in the German litigation." Id.

The February 12, 2001 pleading to the German court stated that "[a] law change according to § 263 ZPO is therefore expressly reserved." ECF No. 67-9 at 23 (English transl.). Plaintiff's German counsel, Georg Spross, proffers his preferred translation: "An extension of claim according to § 263 ZPO [of the German Code of Civil Procedure] is therefore expressly reserved." Spross Decl. ¶ 6, ECF No. 71-1 (emphasis added). Even under Spross's translation, however, Plaintiff appears to have "reserved" only the right to "exten[d]" his German claim, id., not to pursue a separate inventorship claim in the United States. Accord Joachim Zekoll & Matthias Reimann, Introduction

14

to German Law 369 (2d ed. 2005) (indicating that § 263 ZPO allows a matter in dispute to "be amended or modified with the consent of the defendant or upon court approval" (emphasis added)). Thus, the Court finds that no reasonable factfinder could conclude that Plaintiff's February 12, 2001 pleading, "expressly reserv[ing]" the right to extend his German claim, gave Defendants any "reason to believe [they were] likely to be sued" on Plaintiff's inventorship claim in the United States at the conclusion of the German litigation. Vaupell, 944 F.2d at 878.

### b. The June 24, 2002 Letter

In support of Plaintiff's argument that he "repeatedly warned [Defendants] in 2001-2002 that he contested the inventorship of the U.S. patent," Pl.'s Suppl. Br. in Opp'n at 15, ECF No. 104, Plaintiff submits a letter sent by his counsel to Sattler on June 24, 2002, "shortly before the U.S. patent issued in August 2002," id. at 14 (citing Pl.'s Exh. 35, ECF No. 104-2). Plaintiff alleges that his warning contained in the letter – "highlighted in yellow" – was "clear and unambiguous." Id. In the letter to Sattler, Plaintiff's counsel stated, "According to the records available to us (documents, confirmations) you have declared or had others declare to third parties – especially public authorities – (e.g. patent application USA) that you allegedly are the sole inventor of the

15

patent in question." Pl.'s Exh. 35, ECF No. 104-2 (emphasis highlighted in yellow in original). Plaintiff's counsel "advised that we will carefully examine and prosecute your conduct and actions in all legal respects." Id. Counsel demanded that Sattler "reimburse [Plaintiff] for all damages" and "pay [Plaintiff] appropriate compensation" by "July 5, 2002." Id. The letter concluded, "If you allow the deadline to pass, we will initiate appropriate legal action with no further notification." Id.

First, the Court observes that Plaintiff's June 24, 2002 letter in no way indicated that Plaintiff's threatened legal action would be initiated in the United States. Indeed, at the time of the letter, the U.S. patent had not even issued. Second, Plaintiff did initiate legal action in Germany, after Defendants "allow[ed] the [July 5, 2002] deadline to pass." Id. According to an April 28, 2014 sworn declaration of Jans Petry, "[i]n December 2002, [Plaintiff] filed a second German action," which was "not limited to exploitations of the patent in Germany, but included all activities in countries, where patent protection was sought, including the United States." Apr. 28, 2014 Petry Decl. ¶ 7, ECF No. 110-5. "As part of his claim for damages," Mr. Petry asserts, Plaintiff "requested information related to products sold in all other countries, which would include the United States." Id. Thus, because there is no

16

genuine issue of material fact on this point, the Court agrees that "[t]he legal action threatened by Plaintiff in June 2002 was, in fact, filed by Plaintiff in Germany, in which he aggregated his U.S. claim." Defs.' Suppl. Reply Br. at 7, ECF No. 110. "Having added claims for U.S. damages into the German litigation, Plaintiff cannot now claim that this litigation excused his delay in bringing a separate action in the United States." Id.

Certainly, had Plaintiff presented to the Court affirmative evidence that, sometime after initiating his second German action in December 2002, he had put Defendants on notice of his continued intention to file a separate action regarding the U.S. patent after the conclusion of the German litigation, the Court's analysis would likely be quite different. However, the only evidence of any warning to Defendants subsequent to December 2002 is a "letter [from Plaintiff's] American attorneys from July 02, 2012" – nearly a decade later - threatening Defendants "with a claim according to US-law." Aug. 31, 2012 Petry Letter, ECF No. 71-1 at 38. Thus, the Court agrees that "it was reasonable for Defendants to assume the inventorship issue, in its entirety, was being addressed in the German litigation." Defs.' Suppl. Reply Br. at 8, ECF No. 110. See Adelberg Labs., Inc. v. Miles, Inc., 921 F.2d 1267, 1272 (Fed. Cir. 1990) (observing that "an obligation exists on the part of

a patentee to communicate to an accused infringer whom it has contacted and failed to sue because of other litigation that it was not acquiescing in the infringement"). Because Plaintiff's June 24, 2002 letter did not threaten any legal action in the United States, and because the legal action threatened in the June 24, 2002 letter was actually initiated against Defendants in Plaintiff's December 2002 German litigation, there was no reason for Defendants "to believe [they were] likely to be sued" in the United States at the conclusion of the German litigation on Plaintiff's inventorship claim. Vaupell, 944 F.2d at 878. Therefore, the Court determines that no reasonable factfinder could conclude that the June 24, 2002 letter put Defendants on notice of "[Plaintiff's] intention to enforce [the U.S.] patent [in the United States] upon completion of [the German] proceeding," id. at 877.

## 2. Settlement Negotiations

Plaintiff also asserts that "the parties' settlement negotiations between July and September 2012" is a "reasonable and legally cognizable excuse[] for delaying the action until October 2012." Pl.'s Suppl. Br. in Opp'n at 13, ECF No. 104. According to Plaintiff's February 21, 2014 sworn declaration, Plaintiff's "U.S. counsel contacted Defendants in an attempt to settle the dispute" in "July 2012." Pl.s' Exh. 3, Lismont Decl. ¶ 47, ECF No. 71-1. In the context of licensing negotiations,

18

such negotiations must be "continuous and bilaterally progressing, with a fair chance of success," in order to toll the laches period. See, e.g., A.C. Aukerman Co. v. Miller Formless Co., 693 F.2d 697, 700 (7th Cir. 1982). Assuming arguendo that the parties' settlement negotiations were "continuous and bilaterally progressing, with a fair chance of success," id., such that the laches period was tolled during such negotiations, a tolling of the laches period for three months would make little difference to the Court's analysis, as the overall time between the issuance of the U.S. patent and the filing of Plaintiff's action in this Court amounts to nearly a decade. Accordingly, the Court concludes that Plaintiff has failed to rebut the presumption of laches by demonstrating a genuine dispute of material fact regarding the reasonableness of his delay.

## C. Material Prejudice to Defendants

The Court next considers whether Plaintiff "can rebut the presumption of laches . . . by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Serdarevic, 532 F.3d at 1359-60 (quoting Aukerman, 960 F.2d at 1038).

### 1. Evidentiary Prejudice

Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due

to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." Aukerman, 960 F.2d at 1033. Plaintiff asserts that "Defendants' allegation that they suffered evidentiary prejudice because five witnesses (Sattler, Sperling, Stohler, Sohn, Cordemanns) are unavailable is without support." Pl.'s Suppl. Br. in Opp'n at 1, ECF No. 104. However, the Court notes that it is not Defendants' burden to demonstrate evidentiary prejudice unless Plaintiff successfully rebuts the presumption of laches. See Serdarevic, 532 F.3d at 1359 (finding "wrong as a matter of law" the argument "that a defendant cannot rely on the presumption alone, but must present affirmative evidence of prejudice"); Wanlass, 148 F.3d at 1338 (noting that although "appellants bore the burden of showing a lack of both evidentiary and economic prejudice, their brief speaks primarily of [defendant's] failure to offer proof"); Hall, 93 F.3d at 1554 (observing that "where the patentee fails to . . . com[e] forward with either affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in filing suit, the two facts of unreasonable delay and prejudice 'must be inferred'" (quoting Aukerman, 960 F.2d at 1037)). Indeed, where a plaintiff has failed to rebut the presumption of laches, Defendants may "remain[] utterly mute on the issue of prejudice and nonetheless

prevail[]" unless Plaintiff "come[s] forward with any evidence demonstrating a lack of prejudice." Id. (emphasis in original).

### a. Loss of Key Witness Mr. Sperling

Even though the laches presumption relieves Defendants of their burden to prove evidentiary prejudice, Defendants assert, out of an abundance of caution, that they will suffer evidentiary prejudice because "[o]ne key witness is dead" and [o]ther witnesses can no longer recall key details regarding the timing of events related to the development of the patented process." Defs.' Suppl. Reply Br. at 10, ECF No. 110. Plaintiff argues that the death of Mr. Sperling, "the head of engineering at Binzel Germany from 1993 to 1999," id. at 11, "in no way presents any material prejudice to Defendants" because Mr. Sperling's "testimony was prejudicial to Defendants," Pl.'s Suppl. Br. in Opp'n at 7-8, ECF No. 104. In support, Plaintiff submits a Confirmation signed by Mr. Sperling on May 17, 2002, Pl.'s Exh. 29, Sperling Confirmation, ECF No. 104-1 at 83, a transcript of Mr. Sperling's testimony given on February 5, 2003, Pl.'s Exh. 30, Feb. 5, 2003 Hr'g Tr., ECF No. 104-1 at 86, and a transcript of Mr. Sperling's testimony given on October 7, 2008, Pl.'s Exh. 31, Oct. 7, 2008 Hr'g Tr., ECF No. 104-1 at 93.

First, the Court observes that Plaintiff's "evidence" in support of his argument is not affirmative evidence "demonstrating a lack of prejudice," Hall, 93 F.3d at 1554, but

is rather a mere summary of the evidence presented during the German litigation, with respect to Mr. Sperling. It is clear from Plaintiff's exhibits that Mr. Sperling was a key witness in the German litigation and, because he is now deceased, "he is obviously unavailable" to testify in the U.S. litigation. Defs.' Suppl. Reply Br. at 11, ECF No. 110. Although Mr. Sperling's written statement and testimony from the German litigation, on its face, appear to favor Plaintiff, thus potentially supporting Plaintiff's argument that Defendants' may not be materially prejudiced by Mr. Sperling's unavailability, it is obvious from the German court's ruling that its doubts as to the reliability of Mr. Sperling's statements weighed heavily in its ruling against Plaintiff, see Defs.' Exh. C, German Opinion at 8, ECF No. 110-3 (finding that Sperling's statements were "not sufficiently reliable in order for it to be deemed proved that the Plaintiff communicated the idea essential to the invention to the Defendant in the manner explained above"). Plaintiff's evidence fails to show that Defendants would not be materially prejudiced by the inability to question Mr. Sperling before a factfinder in the United States, who can consider Mr. Sperling's statements and judge for itself the credibility and reliability of his statements. It also appears that the German court was concerned to learn that Plaintiff had drafted the written statement signed by Mr. Sperling, and the Court agrees

with Defendants that the loss of the "opportunity to question Sperling," especially regarding Plaintiff's "questionable tactics concerning the Sperling statement" is a "material disadvantage." Defs.' Suppl. Reply Br. at 12.

The Court acknowledges the well-established rule that "[c]onclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient" to establish evidentiary prejudice. Meyers v. Asics Corp., 974 F.2d 1304, 1308 (Fed. Cir. 1992). However, this is not such a case. Defendants have clearly demonstrated that they would be materially prejudiced by having to proceed in this litigation without further examination of Mr. Sperling, and Plaintiff has failed to produce affirmative evidence demonstrating otherwise. Accordingly, the Court finds that (1) Defendants are presumed to have suffered evidentiary prejudice, (2) Plaintiff has failed to demonstrate a lack of evidentiary prejudice, and (3) even without the presumption, Defendants have, in fact, suffered evidentiary prejudice.[2]

### 2. Economic Prejudice

Economic prejudice arises when "a defendant and possibly others will suffer the loss of monetary investments or incur

---

[2] Because Plaintiff fails to produce affirmative evidence demonstrating a lack of evidentiary prejudice resulting from the death of Mr. Sperling, the Court need not conduct a full analysis of the parties' additional arguments regarding evidentiary prejudice.

23

damages which likely would have been prevented by earlier suit." _Aukerman_, 960 F.2d at 1033. In order to determine whether economic prejudice exists, "courts must look for a change in the economic position of the alleged infringer during the period of delay." _Id._ Plaintiff acknowledges that Defendants have advanced several reasons that they have suffered economic prejudice due to Plaintiff's delay in filing suit. Pl.'s Suppl. Br. in Opp'n at 23, ECF No. 104. However, because "all of Defendants' alleged activities occurred after [Plaintiff] repeatedly warned Sattler and Binzel Germany in 2001-2002 that he would take legal action to protect his U.S. patent rights," Plaintiff contends that Defendants' activities "cannot be material economic prejudice." _Id._ Defendants disagree, arguing that "Plaintiff has offered no evidence regarding the lack of economic prejudice to Defendants," and, "[e]ven were the burden of persuasion still on Defendants, it is clear that there is sufficient evidence of economic prejudice." Defs.' Suppl. Reply Br. at 15, ECF No. 110. Specifically, Defendants argue that they will suffer economic prejudice because they "have continued to invest in and expand the infringing product line throughout the period of delay" and, "[m]ore significantly," they have "also refrained from pursuing non-infringing alternatives." _Id._

### a. Investments and Expansion

Even though the laches presumption relieves Defendants of the burden to prove economic prejudice, the Court finds that Defendants easily demonstrate such prejudice.  In a sworn declaration, John Kaylor, "the current President of [Binzel-US] . . . since December 1, 2009," states that, since 2008, when the German court issued its opinions in Defendants' favor, "[i]ncreasing sales of the contact tips in question" has been "a strategic focus of Binzel-US."  Defs.' Exh. J, Kaylor Decl. ¶ 3, ECF No. 110-10.  Kaylor asserts that "Binzel-US [has] continued to expend marketing and sales resources to promote the deep-drilled contact tips," and, consequently, sales "of contact tips manufactured by using the patented deep-drilling technology reach[ed] a record high in 2013."  Id. ¶¶ 3-4; see ABB Robotics v. GMFanuc Robotics Corp., 52 F.3d 1062, 1065 (Fed. Cir. 1995) (observing that "increasing sales [without additional evidence of capital investments] may constitute economic prejudice," as long as "there has been a 'change in the economic position of the alleged infringer during the period of delay'").

Plaintiff produces no affirmative evidence demonstrating that Defendants did not "change [their] economic position [regarding marketing and sales efforts] during the period of delay."  Aukerman, 960 F.2d at 1033.  Rather, Plaintiff merely attempts to point out weaknesses in Defendants' allegations of

25

economic prejudice. See Pl.'s Suppl. Br. in Opp'n at 26-27, ECF
No. 104 (asserting that "there is no indication of prejudice in
the sales data that is presently available," that "erratic sales
do not support a finding of economic prejudice," and that
"[t]here is no evidence that these sales levels changed as a
result of either the German litigations or a U.S. litigation
delay"). However, as discussed above, because Defendants enjoy
a presumption of laches, Plaintiff must do more than merely
dispute Defendants' evidence of prejudice. See Hall, 93 F.3d at
1554 ("[T]he defendant could have remained utterly mute on the
issue of prejudice and nonetheless prevailed.").[3]

Binzel Germany also asserts that, "since the German court's
ruling in 2008, . . . [it has] invested approximately 30,000
Euros in tooling and prototype contact tips using the cold
forming process," which Defendants allege "is covered by the
deep-drilling method," and that it would not have done so "if it
knew that the U.S. patent was going to be disputed." Pl.'s Exh.
24, Responses to Plaintiff's Interrogatory Nos. 9-11 at 6, ECF
No. 104-1. See Adelberg Labs., 921 F.2d at 1272 (observing that
"[m]aking heavy capital investment and increasing production can
constitute prejudice" when it is a result of plaintiff's delay).

---

[3] Plaintiff alleges that "Defendants refused to produce complete
copies of their strategic, budget, sales and marketing plans." Pl.'s
Suppl. Br. in Opp'n at 26, ECF No. 104. Curiously, however, Plaintiff
never filed a discovery motion with the Court addressing any alleged
deficiencies in Defendants' submissions.

Again, Plaintiff produces no affirmative evidence demonstrating either that Defendants did not invest in the cold forming process or that the investment did not result in economic prejudice. Instead, Plaintiff merely asserts that Defendants' investment in the cold forming process represented a small percentage "of [Defendants'] total R&D expenditures" and, in any event, "Defendants could have saved this money if they had heeded [Plaintiff], who told Defendants . . . that this cold forming technology was much more expensive than the patented deep drilling technology." Pl.'s Suppl. Br. in Opp'n at 26, ECF No. 104. However, the fact that the cold forming process may be "more expensive than the patented deep drilling technology," id., does not render the cold form process commercially unviable, as Plaintiff appears to suggest. See Pl.'s Suppl. Br. in Opp'n at 26, ECF No. 104 (citing PACT XPP Techs. v. Xilinx, Inc., No. 2:07-CV-563, 2013 U.S. Dist. LEXIS 125209, at **33-34 (E.D. Tex. Sept. 3, 2013) ("finding no economic prejudice where no evidence of a commercially viable non-infringing alternative was provided")). Nor does the fact that Defendants' investment may have been small, in comparison to other expenditures, demonstrate that Defendants did not "change [their] economic position . . . during the period of delay," Aukerman, 960 F.2d at 1033, or that the "expenditures ha[d] no explicitly proven nexus to the [plaintiff's] delay in filing suit," Hemstreet, 972

27

F.2d at 1294. Accordingly, because Plaintiff fails to produce affirmative evidence demonstrating a lack of economic prejudice to Defendants, such prejudice "'must be inferred.'" Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553-54 (Fed. Cir. 1996) (quoting Aukerman, 960 F.2d at 1038); accord 6A Donald S. Chisum, Chisum on Patents § 19.05 (Matthew Bender) (noting that "there seem to be few cases indeed in which a lengthy period of unexcused delay escaped a laches finding because of proof of want of injury").

### b. Election not to Pursue Non-Infringing Activities

Defendants also assert that they "elected not to pursue non-infringing alternatives based on the fact that they thought the [inventorship] claim had been resolved." Defs.' Suppl. Reply Br. at 17, ECF No. 110. In a sworn declaration, Dr. Emil Schubert, "the current Managing Director of [Binzel-Germany]," stated that "[t]here are a number of non-infringing alternatives to producing contact tips through a deep-drilling method," and "during the course of the German litigation, Binzel-Germany looked at several alternatives to produce the contact tips not using the deep-drilling method." Defs.' Exh. K, Schubert Decl. ¶¶ 3, 5, ECF No. 110-11. Dr. Schubert alleges that, had Plaintiff filed an action in the United States during the German litigation, or shortly thereafter," Binzel-Germany "would have continued to pursue these other technologies and expended time

28

and resources to reduce the associated costs." Id. ¶ 11. However, "because [Plaintiff] gave no indication that he was going to file an independent action in the United States," Binzel-Germany "continued to develop the contact tips manufactured using the deep-drilling method." Id. ¶¶ 11-12. Dr. Schubert asserts that Binzel-Germany "also continued to invest in [its] production capacity for the patented deep-drilled contact tips" and "paid Mr. Sattler royalties," both of which Binzel-Germany could have avoided had Plaintiff "brought his action in the United States earlier." Id. ¶¶ 14-15.

Plaintiff again fails to produce any affirmative evidence contradicting Defendants' allegation of economic prejudice. Rather, Plaintiff merely alleges that Defendants' "speculative comments that Defendants may have changed their business plans to increase sales of all patented and non-patented contact tips, changed the price points of all contact tips, and/or changed the royalty payments to Sattler . . . are nonsensical." Pl.'s Supp. Br. in Opp'n at 28, ECF No. 104. Furthermore, Plaintiff baldly asserts that "[e]very company in the world tries to increase its sales and maximize its price points." Id. In any event, Plaintiff fails to produce affirmative evidence "show[ing] that [none] of the defendants would have acted differently had [plaintiff] sued earlier," Meyers, 974 F.2d at 1308; see also Lautzenhiser Techs., LLC v. Sunrise Med. HHG,

Inc., 752 F. Supp. 2d 988, 1004 (S.D. Ind. 2010) (rejecting plaintiff's argument that defendants' "expenditures were mere garden-variety ventures in the ordinary course of business, and that no evidence suggests Defendants would have altered their conduct had [plaintiff] filed suit earlier," where director testified that defendants "continued to develop our products believing that the allegations had been dropped" and, if they had "clarification of where [they] were alleged to infringe . . . [they] would have done a design-round"). To the contrary, Plaintiff's delay in filing an action over the U.S. patent – especially after the German court had ruled in Defendants' favor on the inventorship issue – resulted in Defendants' confidence in promoting the patented invention and foregoing opportunities to pursue alternatives. See Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544, 1554 (Fed. Cir. 1988) (affirming trial court's finding of material prejudice where president of allegedly infringing company testified that, had he "known of the allegation of infringement by [plaintiff], he would have sold the corporation rather than make continued capital investments"); Am. Home Prods. Corp. v. Lockwood Mfg. Co., 483 F.2d 1120, 1124 (6th Cir. 1973) (holding that defendant's "reliance upon [plaintiff's] silence . . . deprived [defendant] of the opportunity to consider the effect which this litigation might have upon the company, and, unaware of any claim against

30

the company, built up the business by expanding the operations of the company using the contested product and process"). Accordingly, the Court finds that (1) Defendants are presumed to have suffered economic prejudice, (2) Plaintiff has failed to produce any affirmative evidence demonstrating a lack of economic prejudice, and (3) even without the presumption, Defendants have, in fact, suffered economic prejudice.

### D. Evidence of Other Factors

Although Plaintiff has failed to "rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable,'" Serdarevic, 532 F.3d at 1359-60 (quoting Aukerman, 960 F.2d at 1038), the Court nonetheless "must weigh all pertinent facts and equities in making a decision on the laches defense," Aukerman, 960 F.2d at 1034. For example, "[e]ven if unable to overcome the presumption, a patentee may be able to preclude application of the laches defense with proof that the accused infringer was itself guilty of misdeeds towards the patentee." Id. at 1038.  Thus, the Court next considers whether there is any "evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice." Id. at 1036.

Plaintiff makes no allegation that Defendants have committed any "misdeeds" that would preclude the "application of the laches defense." Id. at 1038.  However, Plaintiff asserts

31

that it is generally "reasonable" in patent litigation to "sequenc[e] multiple litigations" - so that a plaintiff can "conserve resources, test the legal basis in a first litigation, and attempt to settle the dispute." Pl.'s Suppl. Br. in Opp'n at 13, ECF No. 104. Thus, Plaintiff contends that his "filing of this action after the German litigations was neither unreasonable nor inexcusable" because he is "an individual plaintiff with limited resources" pursuing "multi-national corporations, with comparatively unlimited resources." Pl.'s Suppl. Br. in Opp'n at 1, ECF No. 104; see also Pl.'s Br. in Opp'n at 2, ECF No. 71. The Court declines to consider Plaintiff's "David vs. Goliath" implications, however, because the Court seriously questions Plaintiff's underlying rationale. Indeed, as Defendants observe, such rationale is often appropriate in infringement actions where "it would be burdensome for a party to have to pursue multiple suits at once, nor would there be any practical way to consolidate actions regarding patents in different countries." Defs.' Suppl. Reply Br. at 6, ECF No. 110. In this case, however, where the ultimate issue of inventorship is the same for the German and U.S. patents, the "parties" are the same, and the "proofs, witnesses, and evidence are identical," id., the Court agrees with Defendants that "allowing Plaintiff to sequence this litigation" actually serves to counteract Plaintiff's asserted

32

rationale because sequencing the litigation "forc[es] the parties to litigate exactly the same case twice and tak[es] up the judicial resources of two courts instead of one," id. Thus, the Court finds that Plaintiff's sequencing argument actually favors Defendants and the Court finds no other factors precluding the application of the laches defense.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**, as Plaintiff's ten-year delay in filing suit against Defendants for correction of inventorship in the U.S. patent creates a rebuttable presumption of laches, which Plaintiff has failed to rebut by "com[ing] forward with either affirmative evidence of a lack of prejudice or a legally cognizable excuse for its delay in filing suit." Hall, 93 F.3d at 1553-54.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 20 , 2014