FILED

SEP 18 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

)
HEDWIG LISMONT,                         )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No.: 2:12-CV-592
                                        )
ALEXANDER BINZEL CORP., *et al.*,       )
                                        )
        Defendants.                     )
_____)

## MEMORANDUM OPINION AND ORDER

On March 12, 2014, the Court granted Plaintiff's Motion for a Protective Order, ECF No. 80, and then on May 1, 2014, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) ("Rule 37") directed Plaintiff Hedwig Lismont ("Lismont") to file "a motion substantiating its costs and fees pursuant to the factors enumerated in *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009)." ECF No. 112 at 7. Now before the Court is Lismont's Motion Substantiating His Attorneys' Fees and Costs, ECF No. 118, filed on July 23, 2014. Defendants Alexander Binzel Corp., *et al.* ("Binzel") filed a timely response on August 6, 2014, ECF No. 120, and Lismont replied on August 12, 2014, ECF No. 121. Accordingly, the Motion is ripe for disposition.

## I. PROCEDURAL BACKGROUND

Having previously discussed this case's extensive procedural history in the Court's Orders granting Plaintiff's Motion for Protective Order, ECF No. 80, and Plaintiff's Request for Attorneys' Fees, ECF No. 112, the Court will not repeat said details here. Rather, only a summary of the present dispute is necessary to establish the context for the present motion. The

dispute originated when Lismont moved for entry of a protective order, ECF No. 68, which Binzel opposed on the grounds that "sensitive financial information that the party has maintained as confidential" should be designated as Attorneys' Eyes Only ("AEO"), ECF No. 75, attach. 1 at 2. In response, Lismont alleged that the AEO designation was unnecessary because Lismont was previously given access to Binzel's financial information as a consultant and during previous litigation in Germany between the same parties. ECF No. 78 at 2. Upon finding, in part, that an AEO designation would be overly restrictive, the Court entered Lismont's version of the protective order. ECF No. 80 at 3-4. While the Court found it undisputed that Lismont had access to some financial documents during his role as a consultant, it noted that there was a material dispute as to whether Lismont had ever been granted access during the German litigation. *Id.* at 3 n.3. Specifically, Binzel alleged, through the declaration of Dr. Emil Schubert, Binzel's Managing Director, that Lismont was not provided access to any financial information during the German litigation, ECF No. 75, attach. 4 at 2, ¶ 6, and thus Binzel objected to Lismont's access to sensitive financial information under a general argument that Lismont might not be trustworthy with such information, and could disclose it or benefit from it. Binzel buttressed this position by averring that, since Lismont did not have access to sensitive financial information before, Lismont's trustworthiness was an unsettled question, which could only be remedied by an AEO designation for the disclosure of sensitive financial information. ECF No. 75 at 4-6.

Lismont, on the other hand, through his own declaration, claimed that he had been given access to financial information during the German litigation, ECF No. 69, attach. 1 at 26, ¶ 5, and therefore contended that his trustworthiness had been established. Faced with these

antithetical positions, the Court took Lismont's request for fees pursuant to Rule 37 under advisement and asked for supplemental briefing to clarify the issue of whether Lismont had previously been entrusted with financial information in the German litigation, in order to determine whether Binzel's opposition to Lismont's refusal to include the AEO designation was substantially justified. ECF No. 80 at 5.

The parties filed supplemental briefs on March 17, 2014. ECF Nos. 82, 85. The next day, Lismont filed an additional unauthorized supplemental brief without requesting leave of Court. ECF No. 86; *see* ECF No. 112 at 3. Binzel then filed a motion for leave to file an additional supplemental brief, ECF No. 90, which was granted by the Court, ECF No. 98, and filed by Binzel on April 15, 2014, ECF No. 103.

After considering the supplemental briefing, the Court found that Dr. Schubert's statement and Binzel's argument in response to Plaintiff's motion for entry of a protective order had not been "entirely accurate, and thus, Binzel's opposition and request for AEO designation was not substantially justified." ECF No. 112 at 4-5. Specifically, the Court noted that after making a definitive statement in response to the proposed protective order that "[d]uring the German litigation, Mr. Lismont was not provided access to *any* of Binzel-Germany's financial documents," ECF No. 75, attach. 4 at 2, ¶ 6 (emphasis added) (statement of Emil Schubert), Binzel attempted to "not so subtly retract from" that statement in the supplemental briefing, ECF No. 112 at 5. In their supplemental briefing, Binzel stated that Lismont "was not given access to *detailed* financial information in the German litigation." *Id.* (quoting ECF No. 82 at 2) (emphasis added). Presented with these differing statements, the Court held that Binzel was not substantially justified in insisting upon the AEO designation because Lismont had at least some

3

access to financial information during the German litigation, and therefore had established his trustworthiness. *Id.* at 7. On that basis, the Court awarded attorneys' fees and directed Lismont to submit a statement of his fees and costs incurred in making the motion for the protective order. *Id.* Lismont then filed his Motion Substantiating His Attorney's Fees and Costs, ECF No. 118, which is now before the Court.

In support of his request for attorneys' fees, Lismont proffered, *inter alia*, the declaration of one of his counsel, Paul J. Korniczky. ECF No. 119, attach. 1 at 2-12. Mr. Korniczky stated that Lismont's attorneys performed five tasks for which Lismont was entitled to attorneys' fees:

1. Preparing the confidentiality order, and corresponding and negotiating with Defendants' counsel to resolve the dispute without motion practice;
2. Preparing the Motion for Entry of the Confidentiality Order, including research regarding the propriety of Plaintiff's position and frivolous nature of Defendants' position, and preparing the first declaration of Mr. Lismont;
3. Considering Defendants' opposition and preparing a reply in support of the motion;
4. In response to the Court's order, preparing two supplemental briefs and a second declaration of Mr. Lismont to address the false statements by Binzel's Managing Director (President), Emil Schubert, and preparing a reply; and
5. Preparing this motion for attorneys' fees.

*Id.* at 3-4, ¶ 7. Mr. Korniczky included individual billing time charts associated with each task for which fees were sought.[1] *Id.* In total, Lismont alleged that his attorneys spent about 160 hours and $80,604 on the aforementioned tasks; however, Lismont voluntarily reduced the attorney time in his fees request by approximately 27% or $21,650, *id.* at 4, ¶ 8, resulting in an attorneys' fees request of $58,955, *id.* at 5, ¶ 9. Thereafter, Lismont requested an additional eight hours for time spent researching and preparing the reply to Binzel's opposition to Lismont's request for fees. ECF No. 121. at 7. Accordingly, the total amount of attorneys' fees sought by Lismont is $62,481. *Id.* The four attorneys to work on the five aforementioned tasks

---

[1] Unfortunately, these charts contain numerous errors, as will be seen *infra*, thereby complicating the Court's task.

were H. Michael Hartmann, Bret A. Hesterberg,[2] Paul J. Korniczky and Lisa L. Furby.  ECF No.

119, attach. 1 at 11, ¶ 16.  Mr. Hartmann, a registered patent attorney who has been practicing for

thirty-eight years, billed a total of 15 hours[3] at a billing rate of $650/hour.  *Id.*, ¶ 17.  Mr.

Hesterberg, a registered patent attorney who has been practicing for thirty years, billed a total of

21.7 hours at a billing rate of $530/hour.  *Id.* at 12, ¶ 18.  Mr. Korniczky, a registered patent

attorney who has been practicing for twenty-eight years, billed a total of 103.6 hours at a billing

rate of $510/hour.  *Id.*, ¶ 19; ECF No. 121 at 7 (including time billed for the five tasks, 99.6

hours, and an additional 4 hours preparing the reply to Binzel's opposition to Lismont's request

for attorneys' fees).  Ms. Furby, who has been practicing patent law for less than a year, billed

26.5 hours at a billing rate of $270/hour.  ECF No. 119, attach. 1 at 11, ¶ 19; ECF No. 121 at 7

(including time billed for the five tasks, 22.5 hours, and an additional 4 hours preparing reply to

Binzel's opposition to Lismont's request for attorneys' fees).  Lismont's attorneys spent $404.01

on legal research.  ECF No. 119, attach. 1 at 11, ¶ 21.

    Considering the voluntary reduction of the number of hours claimed for work performed

by his attorneys "incurred in making the motion," Lismont argued that the total hours for which

reimbursement was sought was reasonable in light of the novelty and difficulty of the questions

raised.  ECF No. 119 at 4.  Specifically, Lismont alleged that the time was reasonable "given (i)

how crucial it was to the future conduct of Plaintiff's case that Mr. Lismont be permitted to

review and consider both Defendants' technical and financial information, and (ii) the need to

---

[2] Lismont advised the Court that he would not claim Mr.Hesterberg's time spent with respect to these tasks in their request "[t]o avoid any dispute over potentially duplicative work by multiple attorneys".  ECF No. 119 at 6. Nonetheless, his time was included in the category entitled "Hours Related Solely to Confidentiality Order" in the various charts proffered by Mr. Korniczky in his declaration. *Id.* at 4-9, ¶¶ 11-14.

[3] The Court derives the total number of hours billed by each attorney on the matters relating to the confidentiality order by adding the sum of the hours listed in the charts provided at ECF No. 119, attach. 1 at 5-11, ¶¶ 11-15, rather than the chart provided at *id.* at 5, ¶ 9, which included Lismont's voluntary reductions.

review and analyze a number of foreign language documents." *Id.* at 7.  Moreover, Lismont argued that "[i]f Defendants' confidentiality order–with its highly restrictive "Attorneys' Eyes Only" provision–had been entered, Mr. Lismont would have been unable to assist trial counsel in reviewing, translating, and analyzing Defendants' financial data severely handicapping, at a minimum, the proper development of Plaintiff's damages claims." *Id.* at 4.  Additionally, Lismont argued that he and his attorneys had to spend much time translating and reviewing Binzel's financial records, and they spent considerable time researching Binzel's arguments because Binzel provided no legal support for their arguments. *Id.* at 8.

Lismont cited multiple cases in support of the reasonableness his legal fees, most notably *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10-cv-00502 (E.D. Va. Aug. 24, 2011),[4] which outlined the hourly rates of Northern Virginia law firms involved in practicing patent law.  The *Vienna Metro* rates were $250-435/hour for an attorney with 1-3 years of experience, $350-600/hour for 4-7 years of experience, $465-640/hour for 8-10 years of experience, $520-770/hour for 11-19 years of experience, and $550-820/hour for 20+ years of experience. *See Vienna Metro*, No. 1:10-cv-00502, Docket No. 263 at 12.  Lismont also proffered the declaration of Paul Werner, a partner with the law firm of Sheppard Mullin Richter & Hampton, LLP, who stated that "the hourly billing rates of Plaintiff's attorneys are reasonable hourly billing rates for patent attorneys with their experience practicing patent law in the Eastern District of Virginia." ECF No. 119, attach. 1 at 16, ¶ 8.

In response, Binzel alleged that Lismont's request is excessive and unreasonable. ECF No. 120 at 1.  Specifically, Binzel argued that the time spent by Lismont's attorneys was

---

[4] *Vienna Metro*, an unpublished Memorandum Opinion and Order, is cited with approval by *Mitile, Ltd. v. Hasbro, Inc.*, No. 1:13cv451, 2013 WL 5525685, at *1 (E.D. Va. Oct. 4, 2013).

unreasonable as "well beyond any reasonable amount of time for a simple discovery motion," and noted that defense counsel spent 1/3 of the time Lismont's attorneys spent on the matter. *Id.* at 2-3. Additionally, Binzel argued that Lismont's use of senior partners to work on the motion was "redundant and unnecessary." *Id.* at 5. Regarding Lismont's attorneys' hourly rate, Binzel contended that the hourly rate was unreasonable because it reflected prevailing market rates outside of the Norfolk Division of the Eastern District of Virginia. *Id.* at 4 n.5. Lastly, Binzel argued that Lismont should not be awarded fees for the initial draft and negotiation of the confidentiality order or the second supplemental brief filed without leave of court because fees for these tasks are inappropriate as outside of the scope of the Court's fee award. *Id.* at 7.

## II. ANALYSIS

### A. Reasonableness of Attorneys' Fees

The Court evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). "In deciding what constitutes a 'reasonable' number of hours and rate, [the Fourth Circuit] has instructed that a district court's discretion should be guided by the following twelve factors:"

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

7

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citation omitted). Because this matter involves a discovery motion rather than the complete disposition of a case after trial, the Court finds that the fourth, sixth, seventh, eighth,[5] tenth, and eleventh factors are not particularly applicable, leaving the Court to address the first, second, third, fifth, ninth and twelfth factors. *See Sun Trust Bank v. Nik*, No. 1:11cv343, 2012 WL 1344390, at *3 (E.D. Va. Mar. 22, 2012). Binzel challenges Lismont's fee on the grounds that the amount of time is excessive, (the first factor), the rates charged and the amount of senior partner time was inappropriate, (the second and third factors), and the amount of fees requested is not in line with similar cases (the fifth and twelfth factors).[6] ECF No. 120 at 2. As to the first factor, the Court **FINDS** that the time and labor expended was excessive and thus not altogether reasonable and necessary. As to the second and third factors, the Court **FINDS** that a fair amount of skill, which was ably demonstrated, was required to properly perform the legal services rendered, and that the issues raised in the motion were somewhat unique and were of some difficulty. Accordingly, the Court **FINDS** that utilization of partners instead of an associate to perform most of the work on Lismont's behalf was not unreasonable. Finally, based on the evidence that has been submitted, the Court **FINDS** that the fifth, ninth and twelfth factors do not fully justify the specific hourly rates sought for the attorneys, and the Court accordingly lowers them. The Court addresses each of these factors in turn.

---

[5] The Court recognizes that, although Plaintiff Lismont was successful on its discovery motion, it ultimately was unsuccessful in the litigation, as the Court granted summary judgment in favor of Defendants less than one week after the motion for attorneys' fees and costs, ECF No. 118, was referred to the undersigned. Nonetheless, the award of fees and costs is appropriate based on Lismont's success on its discovery motion pursuant to Rule 37(a)(5)(A).
[6] While Binzel argued that much of the work should not have been performed by senior partners, and the rates charged by those partners was too high compared to fees charged in other cases, it did not directly challenge the experience, reputation and abilities of Lismont's attorneys themselves, the ninth factor.

8

1. Factor 1: The Time and Labor Expended

### a. Task 1: Preparing and Negotiating Proposed Protective Order

The basis of Lismont's motion for protective order was his contention that Binzel's production of financial information should not have been limited to AEO. The first task for which Lismont seeks attorneys' fees is for time and labor expended in preparing and negotiating the proposed protective order. According to the chart from the declaration Mr. Korniczky submitted in support of the fee request, counsel spent 10.4 hours[7] performing this task. ECF No. 119, attach. 1 at 5-6, ¶ 11. Lismont voluntarily reduced his claim for attorneys' fees for this task, instead asking $2,273 in fees based on 4.25 hours of attorney time. *Id.* at 5, ¶ 9. However, Federal Rule of Civil Procedure 37(a)(5)(A) provides for an award of reasonable expenses "incurred in making the motion," meaning the motion brought to the attention of the Court because the parties had reached an impasse in discovery. The preparation of the proposed confidentiality order and negotiating with the opposing party trying to reach agreement on such an order is a normal part of the litigation process. Accordingly, the Court will not award fees and expenses for Lismont's negotiation with Binzel over the terms of the confidentiality order.

### b. Task 2: Preparation of Motion for Entry of Protective Order

The second task for which reasonable expenses is sought is for the preparation of the motion, research regarding each party's position, and preparation of the declaration of Mr. Lismont. Lismont's counsel provided detailed billing invoices showing work performed. ECF No. 119, attach. 1, at 18-37. According to the chart in Mr. Korniczky's declaration, four of

---

[7] The Court derives this amount from the chart provided for Task One. ECF No. 119, attach. 1 at 5-6, ¶11. Under the category titled "Hours Related Solely to Confidentiality Order Issues" in the chart for the first task, Mr. Hesterberg is listed as having billed 1 hour on January 1, 2014, 0.3 hours on January 28, 2014, and 0.9 hours on February 10. 2014. *Id.* This in actuality totals 1.9 hours, although the chart erroneously lists a total sum of 1 hour. *Id.*

Lismont's attorneys spent 44 hours[8] performing this task. *Id.* at 6-8, ¶ 12. Recognizing that some of the work performed included in these invoices represented labor on matters other than preparing the motion for protective order, Lismont eliminated the time charged by Mr. Hesterberg, which the Court finds appropriate, and therefore seeks recompense for 38.5 hours of attorney time for a total amount of $18,461.

The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir.1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E. D. Va. 1998). The fee applicant bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Based on the issue being contested, the Court **FINDS** that the amount of time expended on this task is excessive. The motion for entry of a protective order was uncomplicated and should not have taken even the reduced claim of 38.5 hours for two experienced attorneys and one associate to complete. The memorandum in support was ten pages, and the arguments made were straight-forward and uncontroversial. While counsel did prepare an extensive proposed protective order, that order was necessarily prepared regardless of whether Binzel ended up opposing it. While "[i]t is reasonable and customary for both associates and partners to work on the same motion and their time expended is not duplicative, but appropriate," *Mitile, Ltd.*, 2013 WL 5525685, at *7, the total time expended is excessive and therefore requires the Court to reduce the amount claimed for time devoted to preparing and

---

[8] The Court derives this amount by calculating the sum of the hours listed as devoted solely to the confidentiality order in the chart provided for Task 2. ECF No. 119, attach. 1 at 5-6, ¶ 12. The chart for the second task lists Mr. Hesterberg as having billed 0.5 hours on February 11, 2014, 2 hours on February 14, 2014, 2 hours on February 15, 2014, and 1 hour on February 18, 2014. *Id.* This in actuality totals 5.5 hours, although the chart erroneously lists a total sum of 5 hours. *Id.* The chart attributes the remaining hours as follows: Mr. Hartmann–5.5 hours; Mr. Korniczky–24.9 hours; and Ms. Furby–8.1 hours, for a total of 44 hours for all four attorneys.

filing the motion to enter the protective order, *see Hensley,* 461 U.S. at 434 ("The district court should exclude from this initial fee calculation hours that were not 'reasonably expended[;]'" such as when "[c]ases may be overstaffed" or the hours "are excessive.") Accordingly, Mr. Hartmann's recoverable hours for preparing the motion will be reduced to from 5.5 to 2.6, Mr. Korniczky's recoverable hours will be reduced from 24.9 to 12.5, and Ms. Furby's hours will be reduced from 8.1 to 4.0.

### c. **Task 3: Preparation of Reply to Binzel's Opposition**

The third task for which reasonable expenses is sought is for the review of Binzel's opposition and preparation of a reply. Similarly, the Court also **FINDS** that the time expended to review Lismont's opposition and prepare a reply brief is excessive. First, Mr. Hartmann billed 1.5 hours on March 6, 2014 for "[r]eviewing opposition to motion regarding protective order; reviewing declarations and supporting documents," and he billed 2.5 hours[9] on March 10, 2014 for "[p]reparing for settlement conference; reviewing reply regarding motion for protective order; and miscellaneous other motions and discovery issues." ECF No. 119, attach. 1, at 7-8, ¶ 13. Mr. Hartmann's time includes tasks unrelated to this third task, and that time which did involve this task does not appear to have contributed to preparation of the reply, consisting solely of his review of briefs and declarations. *Id.* Accordingly, the Court will not award fees for Mr. Hartmann's time for this third task. Mr. Hesterberg billed 9.5 hours working on the reply to Binzel's opposition, and Mr. Korniczky billed 22.3 hours on that task, along with working with

---

[9] Although Lismont claimed to have eliminated hours billed in block entries for tasks not associated with the motion, and listed only 2.0 hours on March 10, 2014 for Mr. Hartmann under the column captioned "Hours Related Solely to Confidentiality Order Issue" relating to the entry "[p]reparing for settlement conference, reviewing reply regarding motion for protective order; and miscellaneous other motions and discovery issues," the total hours claimed for Mr. Hartmann for the third task are 4.0, which necessarily includes the full 2.5 hours billed on March 10, 2014 plus the 1.5 hours billed on March 6, 2014 for "[r]eviewing opposition to motion regarding protective order; reviewing declarations and supporting documents." *Id.*

11

Mr. Lismont on his declaration. *Id.* The Court recognizes that Lismont's reply was complicated by the need to counter Binzel's proffer of the Schubert declaration, which required a detailed response from Mr. Lismont in his own declaration. While this reply and the preparation of Mr. Lismont's declaration was appropriate, the amount of time expended to accomplish this task was excessive, and Lismont has failed to establish why so much time was needed under these circumstances. *See Hensley,* 461 U.S. at 433-34; *Rehab. Ass'n of Va., Inc. v. Metcalf,* 8 F. Supp. 2d 520, 527 (E.D. Va. 1998). Accordingly, Mr. Hesterberg's time for reviewing Binzel's opposition and preparing a reply will be reduced to 6.0 hours,[10] and Mr. Korniczky's time for the same and for working with Mr. Lismont on his declaration will be reduced to 14.0 hours. The Court finds that Ms. Furby's time was reasonable, and will award the full 2.3 hours claimed.

### d. **Task 4: Preparation of Supplemental Brief Responding to Court Order**

The fourth task for which Lismont seeks an award of reasonable expenses is the preparation of his supplemental brief in response to the Court's Order requiring supplemental briefs be filed by March 17, 2014, ECF No. 80, and then the preparation of an additional brief to reply to Binzel's supplemental brief, which he filed on March 18, 2014, ECF No. 86. Preliminarily, the entries provided by Lismont to support his request for fees in relation to the fourth task are somewhat confusing, as the first entry billed by Mr. Harmann on March 11, 2014 for "[s]ettlement conference preparations; corresponding with client; reviewing court order regarding protective order motion," ECF No. 119, attach. 1 at 9, ¶ 14, was incurred a day before the Court issued its Order for entry of a protective order on March 12, 2014, ECF No. 80. Accordingly, this one hour billed by Mr. Hartmann will not be allowed.

---

[10] Although Lismont volunteered to eliminate all of Mr. Hesterberg's time, *supra* n.1, the Court **FINDS** that, given the reductions of time it determines are necessary to Lismont's fee request, the total elimination of all time spent by Mr. Hesterberg is not required.

As the Court noted in its March 12, 2014 Order granting Lismont's motion for entry of a protective order, the representations of Mr. Lismont and Dr. Schubert in their respective declarations as to whether Mr. Lismont had been entrusted by Binzel with confidential financial information in the German litigation were contradictory. ECF No. 80 at 5. Accordingly, the Court ordered each side to submit a supplemental brief addressing the sole question of whether Lismont had been provided such financial information during the German litigation.[11] This briefing was necessary to determine whether Binzel's opposition to Lismont's refusal to include the AEO designation on the proposed protective order was substantially justified on the grounds that Lismont's trustworthiness had not been previously established. *Id.* Each side then did so, and through these supplemental declarations it was clear to the Court that Binzel had walked back its contention that Lismont had not been provided *any* financial information during the German litigation. ECF No. 112 at 5-6. However, upon receiving Binzel's supplemental brief with two attached declarations, Lismont submitted on March 18, 2014, without authorization from the Court, a second supplemental brief and yet another declaration from Mr. Lismont, challenging the position taken by Binzel in its supplemental brief and declarations. ECF No. 86. As discussed *supra*, this second supplemental brief was not authorized by the Court, nor did Lismont seek permission from the Court to file it. The second supplemental brief and attendant

---

[11] As the Court emphasized in explaining why the supplemental briefs were necessary to determine if Lismont had been provided financial information earlier:

> The Court must emphasize that the issue is not: "Lismont already had the information in the German litigation, and thus because he already had it, Binzel could disclose it to Lismont in this litigation." Rather, the issue is: if Lismont did have access to at least *some* financial information during the German litigation, and did not disclose it then, there is no reason for this Court to speculate that he would disclose it now during this litigation. It is irrelevant that through discovery, Lismont would now receive "more," or different "types," of financial information than he might have had access to before. The relevant consideration for this Court is that if Lismont had access to financial information before, during the German litigation, no matter what *amount* or what *type*, and because there is no allegation that Lismont previously disclosed any sensitive information, then Lismont has established his trustworthiness, and Binzel's argument in support of the heightened AEO designation was not substantially justified.

ECF No. 112 at 6-7.

declaration from Mr. Lismont was also unnecessary, since Binzel's subsequent change from its initial blanket position declaring that Lismont had not been provided any financial information was established in its original supplemental brief and attendant supplemental declaration of Dr. Schubert. Accordingly, Lismont may not recover its reasonable fees and expenses for its second supplemental brief, ECF No. 86.

With respect to the time which will be allowed, the predominant hours billed for work on Lismont's first supplemental brief and declaration were performed by Mr. Korniczky, who billed 21.4 hours[12] for this task. ECF No. 119, attach. 1, at 9-10, ¶ 14. This work included working with Mr. Lismont to locate and translate documents supporting his contention that he was provided financial information during the German litigation, in addition to preparing the necessary declaration, exhibits, and the supplemental brief itself. *Id.* In addition, Mr. Hartmann spent 3.5 hours[13] reviewing the Court's Order, corresponding with Mr. Lismont, strategizing a response, and working on the supplemental brief and declarations. *Id.* Ms. Furby billed 3.2 hours performing legal research.[14] The Court **FINDS** that the hours billed by these three attorneys were reasonable and supported by both the billing records and the nature of the supplemental brief with attached exhibits which was submitted to the Court. However, Lismont proffered no billable hours for Mr. Hesterberg in connection with the supplemental brief, but did

---

[12] The Court calculates the 21.4 hours from the numbers listed in the category "Hours Related Solely to Confidentiality Order Issues" pertaining to Mr. Korniczky on Task 4. ECF No. 119, attach. 1, at 9-10, ¶ 14. Although Mr. Korniczky billed a total of 29.4 hours on this task, 8 of those hours were spent on March 18, 2014, on the unauthorized supplemental brief, *id.*, and accordingly are disallowed.

[13] The Court derives the 3.5 hours from the numbers listed in the category "Hours Related Solely to Confidentiality Order Issues" pertaining to Mr. Hartmann. ECF No. 119-1, Ex. 1, ¶ 14. The total number is 4.5 hours; however, the Court disallowed the one hour billed on March 11, 2014, resulting in a total of 3.5 recoverable hours. *Supra* II.A.1.d. Moreover, Lismont's chart erroneously lists a total figure of 6.6 hours for Mr. Hartmann's hours relating to the confidentiality order on task 4. That total is clearly incorrect, and cannot be arrived at even by adding the "Total Billed Hours" from the chart for Mr. Hartmann for this task.

[14] Once again, the totals attested to in Mr. Korniczky's declaration are off, as Ms. Furby's time is omitted from the total figure at the bottom of the chart. *Id.*

for his time on March 18, 2014 in connection with the second supplemental brief. *Id.* Accordingly, the Court will not award Lismont fees for Mr. Hesterberg's time in connection with task four.

### e. Task 5: Preparation of Motion in Support of Award of Reasonable Expenses

The final task for which Lismont seeks an award of reasonable expenses is for his preparation of the motion and affidavits in support of his request for attorneys' fees. Although Binzel does not object to the principle that Lismont's attorneys may recover under Rule 37 for time spent preparing the fee affidavit, the issue of whether time spent preparing a fee affidavit can be included in a Rule 37 fees request has not been addressed in the Eastern District of Virginia.[15] Notably, other courts have held that such time is recoverable. The Eighth Circuit, in allowing recovery for time spent preparing a fee affidavit, noted that Rule 37 encompasses a broad array of expenses including "all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *In re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987) (quoting *Aerwey Laboratories v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565-66 (N.D. Ill. 1981). Moreover, district courts within the Fourth Circuit have held similarly, including the Southern District of West Virginia and the Western District of North Carolina. *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, No. 2:08-cv-285, 2009 WL 3763835, at *2 (S.D.W. Va. Nov. 6, 2009); *Ring Indus. Group, LP v. EZ Set Tank Co., Inc.*, No. 5:07cv103, 2008 WL 3501510, at *2 (W.D.N.C. Aug. 11, 2008) ("[F]ees generated in preparation of the petition for fees are fair game for recovery under Rule 37."). Presented with no opposition by Binzel and no

---

[15] This Court has considered an award of fees for time spent preparing a fee affidavit in other contexts. For example, in the context of a contempt motion, *Buffalo Wings Factor, Inc. v. MOHD*, No. 1:07cv612, 2008 WL 5101937, at *6 (E.D. Va. Nov. 28, 2008), and in the Fourth Circuit, in the context of a § 1988 claim, *Daly v. Hill*, 790 F. 2d 1071, 1080 (4th Cir. 1986).

15

adverse authority within the Eastern District of Virginia to the award, the Court finds that Lismont's attorneys' time spent preparing the fee affidavit is recoverable.

In its preliminary motion and memorandum in support of its request for fees and expenses, Lismont sought to recover for 16 hours of time for Mr. Korniczky and 8.9 hours of time for Ms. Furby. Specific tasks associated with this endeavor included researching the legal standard for an attorneys' fee award, preparing the necessary declarations, locating and preparing billing records and invoices, and preparing the motion and legal brief. ECF No. 119, attach. 1, at 11, ¶ 15. The Court **FINDS** that the time expended is somewhat excessive, as neither the issues presented nor the research required were novel or complex. Accordingly, the Court reduces the time recoverable for Mr. Korniczky to 8 hours and for Ms. Furby to 4 hours. After Binzel filed an opposition to Lismont's request for fees, Mr. Korniczky and Ms. Furby each expended an additional 4 hours to research and prepare their reply to respond to the various arguments raised by Binzel, including drafting an additional declaration and locating additional billing records and invoices to attach as exhibits. ECF No. 121 at 7. In light of the matters to which Lismont was required to respond, the Court **FINDS** that the time expended on the reply is both reasonable and sufficiently supported by the declaration and exhibits provided by Lismont.

### f. Summary

In summary, the Court **FINDS** that Lismont is entitled to be awarded reasonable attorneys' fees for certain, but not all, time expended by its attorneys for their work in performing Tasks 2-5. Lismont is not entitled to be awarded for reasonable expenses for Task 1, since negotiating and drafting a proposed protective order is part of the normal litigation process, and not "incurred in making the motion" pursuant to Rule 37(a)(5)(A). The Court's award for

16

attorneys' fees will be based on an allowance of 59.9 hours for Mr. Korniczky's time, 6.1 hours for Mr. Hartmann's time, 6.0 hours for Mr. Hesterberg's time, and 17.5 hours for Ms. Furby's time, as categorized in the following chart:

| Attorney | Task 1 hours | Task 2 hours | Task 3 Hours | Task 4 hours | Task 5 Hours | Total per Attorney |
|---|---|---|---|---|---|---|
| Korniczky | Ø | 12.5 | 14.0 | 21.4 | 12 | **59.9** |
| Hartmann | Ø | 2.6 | Ø | 3.5 | Ø | **6.1** |
| Hesterberg | Ø | Ø | 6.0 | Ø | Ø | **6.0** |
| Furby | Ø | 4.0 | 2.3 | 3.2 | 8 | **17.5** |
| Total per task | Ø | **19.1** | **22.3** | **28.1** | **20** | **89.5 hours** |

2.   Factors 2 and 3: The Novelty and Difficulty of the Questions Raised and the Skill Required to Properly Perform the Legal Services Rendered.

Beginning with the second factor, the novelty and difficulty of the questions raised in Lismont's motion seeking entry of a protective order were somewhat unique and were of some difficulty compared to the ordinary discovery dispute, given the necessity of coordinating with German citizens, locating and translating German documents to present to the Court, and presenting to the Court supplemental briefs. As the Court noted in its Order granting Lismont's motion to enter the protective order, "'attorneys' eyes only' is a drastic limitation that is 'reserved for only those rare instances in which it is truly justified,'" ECF No. 80 at 2 (citing *Ragland v. Blue Cross Blue Shield of N.D.*, No. 1:12-cv-80, 2013 WL 3776495, at *2 (D.N.D. June 25, 2013)), and protective orders designed to shield evidence from public view are to be narrowly tailored, ECF No. 80 at 2 (citing *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412-13 (M.D.N.C. 1991) (additional citations omitted)). In light of Binzel's opposition, Lismont's original motion was necessary, and inasmuch as that opposition was based on an argument regarding Mr. Lismont's trustworthiness that might or might not be established by reference to

17

previous litigation in Germany, overcoming that opposition was somewhat difficult. Hence, a fair amount of skill was required to muster the evidence and argument necessary to rebut Binzel's position, and such skill was ably demonstrated by Lismont's attorneys.

Binzel further contends that such work should not have been performed by senior partners but, instead, most of it could have been accomplished by associates. The Court rejects this argument. As Lismont pointed out, Mr. Korniczky was in the best position to resolve the discovery dispute in this case, given his knowledge of the history of the litigation, his role in it, and his relationship with Mr. Lismont. ECF No. 121 at 6. Moreover, as noted previously, "[i]t is reasonable and customary for both associates and partners to work on the same motion and their time expended is not duplicative, but appropriate." *Mitile, Ltd.,* 2013 WL 5525685, at * 7. Further, as Lismont also noted, there are circumstances when it is perfectly appropriate and more efficient for a partner to perform certain tasks rather than assign them to an associate with significantly less knowledge and experience in the particulars of the dispute. ECF No. 121 at 6 (citing *Laffey v. Nw. Airlines, Inc.,* 572 F. Supp 354, 365-66 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds,* 764 F.2d 4 (D.C. Cir. 1984)). Here, the particulars of the dispute, including knowledge of the German litigation a decade before, were personally known by Mr. Korniczky. Hence, the second and third factors weigh in Lismont's favor.

3. Factors 5, 9 and 12: The Customary Fee for Like Work, Attorney Experience, Reputation and Ability, and Fee Awards in Similar Cases.

The remaining three categories the Court must consider here in determining Lismont's fee request all impact the hourly rate at which Lismont seeks reimbursement for its attorneys. The Court starts with the ninth factor, i.e. the experience, reputation and abilities of the attorneys. Lismont proffered the law firm profiles of Messrs. Hartmann, Hesterberg and Korniczky, all

18

registered patent attorneys with between twenty-eight and thirty-eight years of experience and partners of the Chicago law firm of Leydig, Voit & Mayer, Ltd., and of Ms. Furby, an associate practicing patent law with the same firm, one year removed from law school. ECF No. 191, attach. 1, at 39-52. Binzel does not challenge the experience, reputation and abilities of these attorneys, and based on the work they performed, and Lismont's proffer, including the attorneys' resumes and credentials, the Court **FINDS** the ninth factor weighs in Lismont's favor.

Concerning the fifth factor, Lismont posited the following billing rates for its four attorneys who worked on this matter: Mr. Hartmann–$650 per hour; Mr. Hesterberg–$530 per hour; Mr. Korniczky–$510 per hour; and Ms. Furby–$270 per hour. *Id.* at 11-12, ¶¶ 17-20. It is Lismont's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler*, 902 F.2d at 277 (citations omitted). Binzel challenged these billing rates, claiming that they were not appropriate for the legal market for the Norfolk Division of the Eastern District of Virginia, not in line with rates charged by Binzel's attorney in other litigation, and excessive "in the context of a simply [sic] discovery dispute." ECF No. 120 at 4-5. In support, Binzel relies on certain cases from the Eastern District of Virginia rejecting similar hourly rate requests as unreasonable. *Id.*

In determining whether Lismont's rate requests are reasonable, the Court finds it appropriate first to consider the Declaration of Mr. Paul Werner, an attorney who is not counsel in this case. *See* ECF No. 119, attach. 1, at 14-16. As the Fourth Circuit explained in *Robinson*,"[i]n addition to the attorney's own affidavit[], the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson*, 560 F.3d at 244 (citation omitted)

19

(emphasis omitted) (finding that the district court abused its discretion in awarding attorneys' fees where the applicant offered no specific evidence, besides an affidavit of a firm member, that the hourly rates sought for her attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which the Fourth Circuit's case law required her to do); *see SunTrust Bank v. Nik*, No. 1:11cv343, 2012 WL 1344390, at *4 (E.D. Va. Mar. 22, 2012) (considering two declarations submitted by persons who were not counsel of record in the case to determine the customary fee for like work and attorney's fees and awards in similar cases).   Through his declaration and citing specific examples, Mr. Werner posited that the rates sought by Lismont's attorneys are in line with rates of other similarly experienced attorneys who have litigated complex civil litigation in the Eastern District of Virginia. ECF No. 119, attach. 1 at 15, ¶¶ 5-6. The cases relied on by Mr. Werner in his declaration, however, are two cases from the Alexandria Division of this Court.

With respect to Binzel's argument that the rates applicable to the Alexandria Division of this Court do not establish rates in the Norfolk Division, Binzel relies on several Norfolk Division cases.  The first, *Project Vote/Voting for America, Inc. v. Long*, was a case wherein plaintiffs sued the General Registrar of Norfolk, Virginia to obtain access to voter registration information. 887 F. Supp. 2d 704 (E.D. Va. 2012).  The Court there found that reliance on the Laffey Matrix, a formula established in *Laffey v. Nw. Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), and "frequently used by the United States District Court for the District of Columbia, and other courts, as a 'useful starting point' for determining the prevailing hourly rates for attorneys in Washington, D.C.," was inappropriate in a First Amendment case litigated in the Norfolk Division. *Project Vote/Voting for America, Inc.*, 887 F. Supp. 2d at 712.  Binzel also relies on

20

*Hargrove v. Ryla Teleservices, Inc.*, a case brought under the Fair Labor Standards Act, and it was in that context where the Court found a rate of $600 per hour to be high compared to other FLSA cases in the Eastern District of Virginia. No. 2:11cv344, 2013 WL 1897027, *6 (E.D. Va. Apr. 12, 2013). Finally, Binzel relies on *Randle v. H & P Capital, Inc.*, a Fair Debt Collection Practices Act case, in which the attorneys' specialized experience was in the field of consumer law. No. 3:09cv608, 2010 WL 2944907, at *8-9 (E.D. Va. July 21, 2010).

Notably, none of the cases Binzel relied on to suggest that the hourly rates were too high were patent cases, thus ignoring the fact that "[p]atent law is a highly specialized area and requires a high level of expertise; therefore, hourly rates that are higher than those of general practitioners is to be expected." *Rutherford Controls Int'l Corp. v. Alarm Controls Corp.*, No. 3:08cv369, 2009 WL 4015357, at *4 (E.D. Va. Nov. 17, 2009). However, Lismont does cite to one Norfolk Division case where fees as high as $675 per hour for an experienced patent attorney were found to be reasonable. ECF No. 121 at 5 (citing *Swimways Corp. v. Tofasco of America, Inc.*, No. 2:08cv481, Docket No. 242, at 10 (E.D. Va. Sept. 3, 2009) (unpublished)). In *Swimways*, the plaintiff was successful in pursuing sanctions against the defendant for its conduct in violating the Court's injunction, a much more complex issue than presented here. *Id.* at 2. Additionally, Swimways proffered the declaration of a local attorney who attested to the reasonableness of the rates in the Norfolk Division. *Id.* at 10. On the other hand, Mr. Werner's declaration more generally addressed billing rates in the Eastern District of Virginia instead of the Norfolk Division specifically.[16] ECF No. 119, attach. 1, at 15, ¶ 7.

---

[16] Mr. Werner did reference the Norfolk Division, but he did so in the context of two cases from the Alexandria Division. ECF No. 119, attach. 1, at 15, ¶ 5.

Turning the Court's attention to Binzel's other arguments as to the reasonableness of Lismont's attorneys' billing rates, the Court gives little weight to the billing rate charged by attorney Dozeman, whatever it was,[17] three years ago in a patent case in the Western District of Michigan, as there is little information provided to the Court as to how those rates compare to the Eastern District of Virginia. Binzel further relies on the fact that the work performed for which attorneys' fees are sought is "garden variety discovery dispute" for which "no specialized knowledge or skill" was required. ECF No. 120 at 5 n.6 (citing *Ropack Corp. v. Plastician, Inc.*, No. 04CV5422, 2007 WL 328880 (N.D. Ill. Jan. 30, 2007). While generally a dispute over the entry of a protective order is, indeed, a typical discovery dispute, the particular circumstances of this dispute were somewhat more complicated, requiring the production and translation of numerous documents stemming from foreign litigation, multiple declarations from both sides, and supplemental briefing.

Finally, with respect to the twelfth factor, Lismont identified two cases in which similarly situated claimants who were successful on their motions to compel were awarded $23,442.50 for 44.7 hours of time, *Mitile*, 2013 WL 5525685, at *2, and $15,070 for 39.7 hours of time, *Sun Trust*, 2012 WL 1344390, at *3. Neither of these cases comes close to the $62,481 award that Lismont seeks here. ECF No. 121 at 1. As Lismont notes, however, because of the unusual factors involved here stemming from the circumstances of the previous German litigation described *supra*, and the supplemental briefing ordered by the Court, the discovery dispute in this case was more involved and complex than the typical case, and a greater fee award may be justified. Nonetheless, at the end of the day, Lismont bears the burden of establishing by clear

---

[17] The parties disagree on the rate charged by Mr. Dozeman in a different case involving Binzel. *Compare* ECF No. 119 at 9-10 and ECF No. 121 at 5-6 *with* ECF No. 121, attach. 1, at 14-20 (Declaration of Douglas A. Dozeman).

and convincing evidence the amount of a reasonable fee in the circumstances. *See Hensley*, 461 U.S. at 433. Relying solely on an unpublished decision from the Norfolk Division finding a fee award of up to $675 was appropriate in a patent case, Lismont has failed to meet his burden by clear and convincing evidence that the specific hourly rates Lismont seeks here, for this discovery dispute, are reasonable. *Id.; Plyler*, 902 F.2d at 377. Hence, based on all of the above factors, including the experience of the undersigned, the Court will reduce the billable rates for each attorney as follows: Mr. Hartmann–$550 per hour; Mr. Hesterberg–$430 per hour; Mr. Korniczky–$410 per hour; and Ms. Furby–$170 per hour.

In sum, then, the Court arrives at the proper lodestar amount per *Grissom*, 549 F.3d at 320-21, by multiplying the time and labor authorized by the Court in Section II.A.1 of this Memorandum Opinion, by the billable rates allowed for each attorney, and, accordingly, **FINDS** that Lismont should be awarded attorneys' fees in the amount of $33,469. The specific calculation of this amount is categorized in the following chart:

| Attorney | Hours authorized | Hourly Rate | Fee |
|---|---|---|---|
| Korniczky | 59.9 | $410 | $24,559 |
| Hartmann | 6.1 | $550 | $3,355 |
| Hesterberg | 6.0 | $430 | $2,580 |
| Furby | 17.5 | $170 | $2,975 |
| **Total Fee Award** | | | **$33,469** |

## B. Costs

In addition to attorneys' fees, Lismont also seeks costs in the amount of $404.01 for Westlaw research fees. ECF No. 191-1, Ex. 3. Binzel did not object to this expense, and the Court **FINDS** that it is reasonable. Accordingly, Lismont will be awarded $404.01 in costs.

### III. <u>CONCLUSION</u>

Plaintiff Hedwig Lismont's Motion Substantiating His Attorneys' Fees and Costs, ECF No. 118, is **GRANTED IN PART**, and Lismont is awarded $33,469 in attorneys' fees and $404.01 in costs, for a total award of $33,873.01.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.


It is so **ORDERED**.


Lawrence R. Leonard
United States Magistrate Judge


Norfolk, Virginia
September 18, 2014